56 N.W.2d 145 (1952)
In re Adoption of CHENEY.
No. 48187.
Supreme Court of Iowa.
December 16, 1952.
*146 Geiser, Donohue & Wilkins, of New Hampton, for appellant.
Harris, Van Metre & Buckmaster, of Waterloo, for appellees.
THOMPSON, Justice.
On January 9, 1952, David E. Keith and Margaret U. Keith, husband and wife, filed their petition in the Black Hawk District Court asking they be granted the right to adopt Randall Lee Cheney, a child born on August 11, 1946, whose address at the time of filing the petition was Sumner, Iowa. Petitioners' residence was given as Hudson, Iowa. It was alleged that the mother of said child was Lena Borneman (Cheney) and the father William Cheney, and the father and mother had been divorced; that the mother had been, until her death on December 23, 1951, the parent having the sole care and providing for the wants of the child. The petition further said William Cheney had never furnished care and support and his whereabouts were then unknown. A further allegation was made that the child had been under petitioners' care for twelve months prior to the filing of the petition.
The court thereupon ordered the petition be set down for hearing on February 1, 1952, and that notice be given to William Cheney by one publication in the Waterloo Courier not less than ten days prior to the time fixed. The Waterloo Family Service League was directed to verify the statements made in the petition and to make further inquiry and investigation as provided by Code section 600.2, I.C.A., and report its findings to the court.
The notice to William Cheney was published as ordered, on January 10, 1952, and the Family Service League made a full report and recommended the granting of the adoption. Prior to the time fixed for hearing, David E. Keith, one of the petitioners, was appointed guardian of the person of Randall Lee Cheney by the Butler county district court, and he filed his consent to the adoption. Some time after her divorce from William Cheney the mother of the child married Arlo A. Copp, and for about one and one-half or two years prior to her death, which occurred as the result of an automobile accident, the boy had lived with her and his stepfather. At the time of the filing of the petition he was in the care of and being supported by Arlo A. Copp. He had, however, lived in the home of the petitioners for some time, perhaps as much as three years, before that.
The matter of the appointment of a guardian came to the appellant's attention, and on January 23, 1952, his attorneys wrote to appellees' then counselwho does not represent them in this courtsaying that Mr. Copp was desirous of retaining custody of the child, that he doubted the legality of the appointment of a guardian since the Keiths were not blood relatives, and asking if Mr. Keith would withdraw. On January 29th the Keiths' attorney replied, saying the boy had made his home with them most of his life, that their motive was their affection for him, and that he would take the matter up with Mr. Keith when he came in for the next meeting of the Black Hawk county board of supervisors. (Mr. Keith was a member of the *147 board.) On February 1 Mr. Copp's counsel replied saying their client was quite attached to the boy and had expected to file adoption proceedings. The child at the time was evidently still in the hospital recuperating from injuries suffered in the same accident in which his mother lost her life.
On February 1 the Black Hawk court entered its decree granting adoption to the Keiths. For convenience Arlo A. Copp will hereafter be referred to as the plaintiff, and the Keiths as defendants.
On March 23, 1952, plaintiff filed his petition to vacate the decree of adoption. It alleged that since petitioner's marriage to the child's mother the boy had at all times lived with them and had been supported by them; since the death of the mother the child had been in plaintiff's custody and cared for by him; he had no notice or knowledge of the adoption proceedings; a fraud was perpetrated upon the court in that it was not advised that at the time of her death Lena Cheney Copp was the wife of plaintiff and the child was living with them and being supported by plaintiff, that defendants' then attorney did not advise the court plaintiff's counsel had communicated with him and had objected to the appointment of David E. Keith as guardian. Further it was alleged the child was not in the care and custody of his guardian but was in the care and custody of plaintiff, and that the consent of and notice to plaintiff was required under the provisions of Chapter 600 of the Code of 1950, I.C.A.; that the appointment of David E. Keith as guardian was "irregular and void" because he does not come within the class of persons contemplated by Code section 668.2, I.C.A.; and finally, that the decree was void because the child had not lived in the proposed home for twelve months, and the period of residence could not be waived because the petitioners for adoption did not come within the provisions of the statute providing for such waiver in certain cases.
The defendants filed their resistance, and a request for determination of law points by the court. Upon hearing the court decided the legal propositions involved against the plaintiff, and dismissed his petition to vacate. It should be noted that in his judgment and decree dismissing this petition, the trial court found William Cheney, father of the adoptee, had on May 15, 1952, filed his consent to the adoption. This decree was entered on May 29, 1952. On June 2, 1952, plaintiff filed an amendment to his petition to vacate, alleging fraud upon the court in that the original petition for adoption falsely stated the child had been in the defendants' home continuously for a period of twelve months prior to the decree of adoption; and again alleging plaintiff had taken Randall Lee Cheney into his home at the time of his marriage to the boy's mother, and stood in loco parentis to him and had supported him, and that the adoptee had been in his custody and control ever since and still was at that time. This amendment was apparently not called to the attention of the court, and no ruling was made upon it. On June 17, 1952, notice of appeal was served. Some complaint is made as to the failure of the court to rule on the amendment, but no ruling was asked for, and we think that by taking his appeal the plaintiff elected to stand upon the decree of May 29th. If any new matter was raised by the amendment, the failure to bring it to the attention of the court and to procure a ruling precludes consideration of it on this appeal. In re Adoption of Karns, 236 Iowa 932, 938, 20 N.W.2d 474, and cases cited.
I. Some preliminary matters should be discussed at this point before proceeding to the two major issues involved. The plaintiff raised the point that David E. Keith was not a proper guardian because he is not related to the child, citing Code section 668.2, I.C.A., which we quote:
"The surviving parent becomes such guardian, but, if there is none, the district court shall appoint one, who shall have the same power and control over his ward as the parents would have, if living."
No error is assigned upon this point, nor would it avail plaintiff to do so. We think the appointment of a guardian by the Butler district court could not be collaterally *148 challenged in this proceeding. We have further held that a guardian of the person of a minor may consent to its adoption by himself. In In re Adoption of Burkholder, 211 Iowa 1222, 1224, 1225, 233 N.W. 702, 703, we discussed this question thoroughly, concluding with this statement:
"Appellant cites no authority sustaining her contention that the guardian is incapable of giving consent to his own adoption of his ward, and we have found none. Authority to the contrary is found in Bancroft v. Heirs of Bancroft, 53 Vt. 9. See also Van Matre v. Sankey, 148 Ill. 536, 36 N.E. 628, 23 L.R.A. 665; 1 C.J. 1388."
II. We come now to the plaintiff's assigned errors I and II, which are closely related and are argued together. It is urged in these assignments that the consent of the plaintiff, the stepfather having custody of the child and supporting him and so standing in loco parentis, was essential to a valid adoption; and likewise that he was entitled to notice, and none having been given him the adoption decree was void. Adoption was unknown to the common law, and so is purely statutory. In re Estate of Fitzgerald, 223 Iowa 141, 272 N.W. 117; Holmes v. Curl, 189 Iowa 246, 178 N.W. 406. So we must scan the statutes to determine what is necessary to perfect a valid adoption, and in so doing we must remember that the matter is entirely legislative, and when the law-making body has spoken its mandate must be followed.
Section 600.3, Code of 1950, I.C.A., is the statute governing consent in Iowa. We set out the material part of it here:
"No person may assign, relinquish, or otherwise transfer to another his rights or duties with respect to the permanent care or custody of a child under fourteen years of age except in accordance with this chapter. The consent of both parents shall be given to such adoption unless one is dead, or is considered hopelessly insane, or is imprisoned for a felony, or is an inmate or keeper of a house of ill fame, or unless the parents are not married to each other, or unless the parent or parents have signed a release of the child in accordance with the statute on child placing, or unless one or both of the parents have been deprived of the custody of the child by judicial procedure because of unfitness to be its guardian. If not married to each other, the parent having the care and providing for the wants of the child may give consent. If the child is not in the custody of either parent, but is in the care of a duly appointed guardian, then the consent of such guardian shall be necessary."
If the plaintiff comes, by fair intendment, within the class whose consent is required, then he has a just grievance. If he does not of course he cannot prevail. We find nothing in the list of those who must consent that includes a stepparent, even though he stands in loco parentis. The statute refers to "both parents." "Both" means two. The Twentieth Century Dictionary defines it as referring to "the two; the pair, the couple." The Standard Dictionary says that it is a synonym for "twain-two;" as a pronoun, "the twothe pairthese two." Consequently there is no implication that the consent of any third party be required, unless both parents are dead, or for any reason the child is not in the custody of either, when a guardian having the "care" of the child must consent. The statute goes to some length in its attempt to cover all possible situations that may arise, with the evident purpose of making adoptions possible, under the control of the courts and with the best interest of the child always uppermost in mind. But the use of the word "parent" so evidently applies to the natural parents and is limited to them only by the use of the word "both," that the exclusion of stepparents, grandparents, other relatives or persons standing in loco parentis is clearly indicated.
We have here a situation in which the consent of the duly appointed guardian was on file before the adoption decree was entered. Likewise, the consent of the natural father was filed before the ruling on plaintiff's petition to vacate. But plaintiff says that the guardian did not have the "care" *149 of the child within the meaning of the statute, and it is true also that the natural father did not have actual care and custody; but he did have the right thereto, at least presumptively. Wooley v. Schoop, 234 Iowa 657, 12 N.W.2d 597. In Allender v. Selders, 227 Iowa 1324, 1331, 291 N.W. 176, 180, Justice Bliss said, for the court:
"This right of a surviving parent is an absolute one, unless it has been relinquished by abandonment, contract, or otherwise, or unless the best interest and welfare of the child call for other care and custody."
We have, in fact, gone farther on the question of adoption, by holding that a parent who might not himself be a fit custodian of a child could give a valid consent to adoption. In Smiley v. McIntosh, 129 Iowa 337, 341, 105 N.W. 577, 578, we said:
"The father was, perhaps, not a proper person to have the custody of the child, but we do not understand how that fact can in itself render the adopting parents improper persons to have such custody, or impeach the validity of the instrument of adoption." (Italics ours.)
These authorities have weight in consideration of the problem before us. In the first place, the statute does not make provision for requiring the consent of a stepfather, even though he stand in loco parentis. In the second place, if the consent of the guardian was not sufficient because he did not have the "care" of the child (although he has the right to it if the parent does not), the consent of the father, who who has the presumptive right, was at hand when the ruling dismissing the petition to vacate was made. It was not on file when the decree of adoption was entered; but it is there now, and it would be an idle and expensive gesture to reverse this case with the knowledge that the decree must again be entered because of the consent. Unless we are to overrule Smiley v. McIntosh, supra, the consent is valid.
It must follow, of course, that if the consent of the father, or of the guardian, is sufficient, the consent of the stepfather is not required. Conversely, would the consent of the stepfather alone be held sufficient? We apprehend not; and this seems a complete answer to plaintiff's contention. It is the natural parents, and the natural parents only, who are referred to by the statute.
Directly in point is State ex rel. Sheedy v. District Court, 66 Mont. 427, 213 P. 802. Here was a contention between the stepfather and a maternal aunt of the child. The aunt had obtained a decree of adoption without the consent of the stepfather, and without notice to him, although the child had lived with his mother and stepfather for about three years prior to the mother's death. The relator-stepfather filed a petition to revoke the letters of adoption, raising the same contentions made by the plaintiff in the case at bar; that is, lack of consent and lack of notice. He alleged his status as being in loco parentis. But the Montana Supreme Court affirmed the lower court in quashing the relator's petition. The Montana statute, R.C.M.1947, § 61-130, provided that a minor child could not be adopted without the consent of its parents. Another statute, R.C.M.1947, § 61-117, said that, if a husband received his wife's children by a former marriage, and supported them, "it is presumed that he does so as a parent". This gave additional support to the relator's argument. But the Montana court, after an extensive consideration of the authorities and discussion of the question, held the adoption statutes referred only to the lawful father and mother by blood, and that neither was the stepfather's consent required nor was he entitled to notice of the proceedings. It said, 213 P. at page 804:
"Our conclusion is that the expression `as a parent,' as used in section 5846, supra, means not that the husband, by receiving the children into his family and supporting them, becomes their `parent' within the meaning of the adoption statute, but merely that he receives and supports them in the same manner in which their lawful father would receive and support them; * * *."
Ballentine's Law Dictionary, 770, defines loco parentis thus: "In the place of the *150 parent. A school-teacher is said to be in loco parentis while the pupil is in his charge."
In Coakley v. Coakley, 216 Mass. 71, 102 N.E. 930, at page 932, we find this:
"Parent commonly means the lawful father or mother by blood. It does not lend itself readily to a significance so broad as to include stepfather or stepmother, or anyone standing in loco parentis. The use of such other words in common speech of itself has some tendency to indicate a different meaning." (Italics ours.)
In Marshall v. Macon Sash, Door & Lumber Co., 103 Ga. 725, 30 S.E. 571, 572, 41 L.R.A. 211, an action brought by children for the death of their stepfather, with whom they had lived and who had supported them for several years, the Georgia court said:
"It is contended in this case that the stepfather stands in loco parentis as to his stepchildren, and that the latter may recover damages for the negligent homicide of the former. Our attention has been called to no authority in which it has ever been decided that the word `parent,' either in the legal or ordinary acceptation of that term, includes a stepfather or stepmother."
To the same effect are Thornburg v. American Strawboard Co., 141 Ind. 443, 40 N.E. 1062, 50 Am.St.Rep. 334, and Heinemeier v. Arlitt, 29 Tex.Civ.App. 140, 67 S.W. 1038.
The words "loco parentis" mean "in place of the parent." They do not mean "a parent." As the Massachusetts court well pointed out, the common use of different words to describe a parent and a stepparent in themselves lend much weight to the conviction that they are not identical terms. One who stands in loco parentis assumes certain duties, generally for a limited time and by his own election. Anyonea grandparent, an aunt, an uncle or other relative, or even a stranger to the blood  may occupy this position. But, keeping in mind the unbroken trend of authority and the commonly accepted meaning of the term "parent," we are sure that a stepfather is not such within the meaning of the adoption statutes. It would be a decided surprise to the legal profession if we should hold that the consent of a stepparent to an adoption is sufficient, or necessary, to legalize it. Perhaps it may be thought that in some cases this construction works an injustice; if so, the remedy is for the legislature. In the case at bar, however, the plaintiff, although married to the adoptee's mother for about three years, made no effort to adopt him, although the mother's consent could presumably have been readily obtained. He is not in a position to complain of inequity.
The plaintiff relies chiefly upon Holmes v. Derrig, 127 Iowa 625, 103 N.W. 973, 975. This was a habeas corpus proceeding. The matter of right to custody is not conclusively determined in adoption proceedings. The contest in the Holmes case was between a purported adopting parent, who had obtained his rights through a petition filed by the stepfather of the minor and the consent of a clerk of the district court of Webster countythe statute then providing that if both parents were dead such consent might be givenand the maternal grandparents, with whom the child had resided since the death of his mother, the last survivor of the two natural parents. The real holding of the case is that the adoption had no effect in so far as it required a delivery of the boy to the adopter by the grandparents, who are described as his "natural guardians" and so conceded to be by the adopter. It is said:
"The evident purpose of the statute upon which appellee relies is not to provide a tribunal by which disputed rights to the custody of the child may be adjudicated or determined. * * * The mayor or clerk is nowhere given the power to pass upon the rights of persons who assert claims to the custody of the child, and such persons are in no manner estopped or foreclosed by the officer's act."
Some emphasis is also placed upon the fact that the act of the consenter, under the statute then in force, was nonjudicial. There is no holding that the adoption was void, but only that it would not serve as *151 weight overbalancing the claims of the natural guardians. The case was remanded for further proceedings.
Much the same situation appears in Burger v. Frakes, 67 Iowa 460, 23 N.W. 746, 25 N.W. 735, also cited by plaintiff. Here, the parents of the minor being both deceased, the paternal grandfather was appointed as its guardian, both of person and property. The maternal grandfather, having been defeated in his attempt to procure his own appointment as guardian, filed a petition for adoption and obtained the consent of the clerk of the court thereto. The lower court held this sufficient to require an order giving custody to the adopter, in a habeas corpus proceeding. The holding of this court was that the guardianship gave the paternal grandparent the right to custody and control of the child, that the purported adoption, being a nonjudicial proceeding without notice to or consent of the guardian named by the court in a judicial proceeding, was not sufficient to warrant the order granting custody to the adopter. The best interest of the minor was discussed, and the parties held to have made substantially equal showing thereupon. But the rights of the guardian to custody and control were held superior to those of one claiming under an adoption made afterward without judicial process, but as the statute then provided by filing an adoption petition which, with the consent of the clerk of the court, made ex parte, was validated merely by filing for record in the office of the county auditor.
Since the Holmes and Burger cases, both supra, were decided, the legislature has recognized the weakness of the procedure then in effect, and has provided that all adoptions must be by judicial process. It has, in considerable detail, set forth the required procedure and has designated those whose consent is required and those who must be given notice. We have pointed out that the only matter involved in those cases was that of custody, and we find no final holding in either that the adoptions were void, but only they were not sufficient in and of themselves to require a custodial order for the adopter. Much of the reasoning is no longer pertinent because of the drastic change in the adoption statutes.
The plaintiff says, however, he had such an interest in the child that he should have had notice even though his consent was determined not to be necessary. This is also answered in State ex rel. Sheedy v. District Court, supra. Again we find the Montana court's language apropos. On this question it said, 213 P. at page 804:
"An examination of our statutes, so far as they are here involved, discloses that they do not contemplate any adversary proceeding. They require only the consent of the parents, if living. To hold that notice is required to be given to others would be to read into them something which they do not contain, and this may not be done."
Indeed, it is difficult to see why, if the adoption may be had without the consent of the plaintiff here, he has any such interest as requires a notice to him. In any event, the statutes do not so provide. A notice to the divorced parent who does not have the custody is required; if notice to a stepfather, relative, or stranger having at the time custody of the child were deemed essential, the legislature would surely have said so. We cannot, by judicial legislation, supply the deficiency if such it is.
Some stress is laid upon the failure of defendants' then attorney to advise plaintiff's counsel, before the date set for hearing on the adoption petition, that it was pending. We may grant that it might have been in the interest of fairness if he had done so; yet, if plaintiff's consent was not required the failure to give informal notice has no bearing upon the legal situation. We find no error in the trial court's holding upon the matters discussed in this division.
III. Plaintiff's third assigned error is bottomed upon a claimed fraud upon the court. Paragraphs a, c, and d, raise contentions already discussed and disposed of in the preceding division. They assert the claim that there was a fraud upon the court because it was not disclosed the child was in the custody and control of his stepfather *152 who had stood in the position of loco parentis for approximately three years prior to the filing of the petition; because the court was not advised the stepfather-plaintiff was objecting to the appointment of David E. Keith as guardian; and because the court was not told the child was making his home with plaintiff, who was desirous of adopting him and had so advised defendants' then attorney.
All of these alleged frauds have been discussed in Division II preceding. Paragraph b, however, attempts to raise a new allegation not heretofore considered. Proposition III of plaintiff's assignment of errors, omitting a, c, and d, above referred to, is set out:
"The petitioners perpetrated a fraud upon the court in the filing of their petition and obtaining a decree of adoption in the following respects: * * *
"b. In stating to the court that the said Randall Lee Cheney for a period of twelve months prior to the filing of the petition for adoption had continuously resided with the petitioners, David E. Keith and Margaret U. Keith."
It will be observed that the question of the necessity of the residence of the minor with the adopting parents for twelve months immediately prior to the adoption is not raised by this assignment. Rather the question is as to whether it was a fraud upon the court not to advise it of the situation; that is, that the child was not with the adopting parents at the time, and had not been for some time. The statute says no adoption decree shall be granted until the child shall have lived for twelve months in the proposed home. But the question as to whether this means twelve months last past is not argued, except as an incident to the fraud. In argument plaintiff says: "The pertinent question is, Did the petitioners perpetrate a fraud upon the court?"
We have pointed out above that the question of fraud through failure to disclose the true situation as to residence was raised only in the amendment to petition to vacate filed after the court had entered its ruling dismissing the original petition, and that the record does not show it was ever called to the court's attention. Consequently, it is not properly before us. But in any event we find no fraud. The original adoption petition gave the petitioners' address as Hudson, Iowa; the child's as Sumner, Iowa. The guardian was appointed in Butler county. Further, the adoption decree recited that the child made his home with the petitioners until November, 1950, and had resided with them during an interval of about four months since said date. The court was not deceived or defrauded in any way as to the twelve months residence. It is clear from the different addresses given in the petition and the finding in the decree that the court was fully advised the child was not with the defendants at the time their petition was filed, and that he had not been with them continuously during the immediately preceding twelve months. There was no fraud upon the court through failure to disclose the material facts as to residence.
In his petition to vacate the plaintiff alleged the adoption was void because the child had not lived in the adopters' home for the statutory period. But we have pointed out that error is not assigned for the court's failure to sustain this contention. The assignment merely alleges a fraud upon the court because of the allegations of the adoption petition and the failure to advise the court of the facts as to residence. Accordingly we are not required to determine whether an adoption decree is void if the child has not resided in the proposed home for the immediately past twelve months. That he need not be there at the time of the filing of the petition is shown by the language of the statute, section 600.1, which provides for jurisdiction of the district court in the county in which either the petitioner or the child resides. On the question of whether the "twelve months" required by section 600.2 means the immediately past twelve months, see Hansen v. Iowa Employment Security Commission, 239 Iowa 1139, 1141, 34 N.W. 2d 203, 204, where, in construing a statute providing "unless and until there shall have been three calendar years", we said:
"The construction for which the commission contends would require us *153 to read into the statute the word `consecutive' between `three' and `calendar years' and also to add the provision that such three years immediately precede the computation date. * * * We have no power to write such provisions into the law."
It is perhaps appropriate to note also that the statute, section 600.2, supra, in connection with the requirement the child shall have lived for twelve months in the proposed home, says:
"Such period of residence may be shortened by the Court upon good cause shown when satisfied that the proposed home and the child are suited to each other."
In the instant case the court found the child had lived in the home until November, 1950, and also for a period of about four months between that time and the date of the filing of the adoption petition, which was January 9, 1952. In other words, under this finding the child must necessarily have been in the proposed home for some months at least during the twelve-month period immediately preceding the commencement of the adoption action. The court had the right, under the provision of the statute above quoted, to shorten the twelve-month period if satisfied the proposed home and the child were suited to each other. This, of course, is the purpose of the residence requirement, and we must presume the court found suitability of the home and the adoptee as the statute requires. Burtch v. Zeuch, 200 Iowa 49, 55, 202 N.W. 542, 39 A.L.R. 1349. However, as we have pointed out above, the propriety of the trial court's finding on the question of residence is not before us, and we do not decide it.
IV. Plaintiff further contends that if it be held he was not entitled to notice of the adoption proceeding, under Chapter 600 of the Code of 1950, I.C.A., the provisions of the chapter are unconstitutional as depriving him of his rights without due process of law. It is a sufficient answer to say this question was not raised in the lower court, and so is not available to plaintiff here. In re Adoption of Karns, supra; Iltis v. Gentilly, 234 Iowa 689, 13 N.W.2d 699; In re Estate of Sarbaugh, 231 Iowa 320, 1 N.W.2d 105. In Conkling v. Standard Oil Company, 138 Iowa 596, 600, 116 N.W. 822, 824, we said:
"In justice to the trial court, if on no other ground, we will not permit a party to mend his hold after coming into this court, and seek to advantage himself on grounds not suggested on the trial below."
There was no indication in plaintiff's petition to vacate that he challenged the constitutionality of Chapter 600 or any part thereof.
We find no error.
Affirmed.
BLISS, GARFIELD, MANTZ and WENNERSTRUM, JJ., concur.
MULRONEY, C. J., dissents, and is joined by HAYS, J.
SMITH, J., dissents, and is joined by OLIVER and HAYS, JJ.
MULRONEY, Chief Justice (dissenting).
I cannot concur in the majority opinion. The child was five and a half years old at the time of the adoption decree. The trial court in his ruling stated: "It is undisputed that Arlo A. Copp, the stepfather, at the time of his marriage to Lena Cheney Copp, deceased, took the child into his family and under his care in such a way that he placed himself in loco parentis and assumed and fulfilled his obligations to support him."
The child's mother married Copp about three years before her death on December 23, 1951 so ever since the child was two and a half or three years old Arlo A. Copp has had the child in his care and custody and, according to the trial court's finding he has fulfilled the obligations of a father toward his child. The child's residence in the Keith home during its earlier years was residence in the custody and care of its mother. It was not residence in the Keith home for the purpose of adoption.
I. Division I of the majority opinion seems to conclude that this is a consent *154 adoptionthat the statutes relative to consent were satisfied because the court-appointed guardian consented to the adoption. Again in Division II the majority states: "We have here a situation in which the consent of the duly appointed guardian was on file before the adoption decree was entered." It will be remembered the guardian was David E. Keith who secured his appointment in an ex parte proceeding when the child was in the hospital and not in his custody. The adoption statutes provide, Sec. 600.3, Code 1950, I.C.A.: "If the child is not in the custody of either parent, but is in the care of a duly appointed guardian, then the consent of such guardian shall be necessary." The consent of a guardian out of custody is of no importance. The trial court recognized this. In his ruling he stated: "The record contains the consent of David E. Keith, guardian without custody of Randall Lee Cheney, a harmless but unnecessary gesture."
II. The trial court held neither notice to, nor consent by, the stepfather, standing in loco parentis to the child was necessary to effect a valid adoption. This ruling is affirmed in Division II of the majority opinion where both questions are discussed together. I prefer to discuss them separately but before doing so I would like to comment on the statements made in this division of the majority opinion with respect to the consent filed by the natural father after the adoption decree.
The record shows the natural father deserted the mother before the child was born. He never provided for the care and wants of the child. His whereabouts were unknown. It fairly appears that he never saw the child. His consent to the adoption was signed in Massachusetts before a notary public. The majority opinion points to this consent of such a father who had abandoned all parental rights and duties and says "the consent of the natural father was filed before the ruling on plaintiff's petition to vacate * * * the consent of the father, who has the presumptive right, was at hand when the ruling dismissing the petition to vacate was made. It was not on file when the decree of adoption was entered; but it is there now, and it would be an idle and expensive gesture to reverse this case with the knowledge that the decree must again be entered because of the consent."
I can only interpret this language as meaning a father, who has deserted his wife while she is pregnant and totally abandoned the child when it is born and never provided for its care or wants, can nevertheless effect a valid adoption of the child by giving his consent thereto. I submit the holding is unsound. It is directly contra to the present adoption statute providing that "The parent having the care and providing for the wants of the child may give consent." Section 600.3, Code 1950, I.C.A. This court has gone far, and in the opinion of the writer of this dissent, much too far in holding a parent out of custody is unable to veto an adoption by withholding consent, even though such parent is contributing or offering to contribute to the child's support. In re Adoption of Alley, 234 Iowa 931, 14 N.W.2d 742; In re Adoption of Karns, 236 Iowa 932, 20 N.W. 2d 474. Now we have a holding that a parent out of custody, who abandoned the mother before the child was born, and who I believe has never even seen his five year old son, can, by a written consent, give his child in adoption. I think the consent of the natural father was utterly immaterial. No one could have been a more complete stranger to the child than his natural father. It is not even shown that he knew the Keiths or their home. Neither is it shown that he knew Mr. Copp. It was obviously a solicited consent after the attack on the adoption decree when the Keiths probably discovered his whereabouts. I would place this consent in the same category as the court placed the guardian's consent, "a harmless but unnecessary gesture."
III. Most of Division II of the majority opinion is devoted to a discussion of whether the consent of the stepfather standing in loco parentis to the child was essential to a valid adoption. The majority opinion makes much of the fact that adoption is "purely statutory" and "entirely legislative" and the courts must follow the mandates of the law making body. The gist *155 of the holding is that the statute states the consent of the parent providing for the care and wants of the child is necessary and the term "parent" does not include a "stepparent standing in loco parentis" to the child. The majority states the term "parent" as used in the statute means the natural parent or parent by blood. I call attention to the fact that giving the term such a restricted meaning would exclude adoptive parents. There is much authority that the term "parent" as used in statutes, especially statutes of descent, does not include an adoptive parent. And authority that in other statutes it does include adoptive parents. See Vol. 31, Words and Phrases, page 75. The same is true with respect to whether the term "parent" in a statute should include stepparent. There is authority both ways under varying statutes. It is not of much use to analyze the various holdings. The majority cites one case involving an adoption statute: State ex rel. Sheedy v. District Court, 66 Mont. 427, 213 P. 802, where the sister of the deceased mother of the children secured an adoption decree for the children then in her custody without the consent of the stepfather. There are points of difference in the facts and statutes but in any event I would not agree with the holding in that case.
Another case interpreting a statute somewhat similar is State ex rel. Williams v. Juvenile Court, 163 Minn. 312, 204 N.W. 21, 22. There the court interpreted the language in a statute: "in no case shall a dependent child be taken from his parents without their consent * * *" as including a stepmother in loco parentis to the child.
I think the statute should be construed to carry out the manifest intention of the legislature. Sec. 4.1, Code 1950, I.C.A. The general rule is "a stepparent who voluntarily receives the stepchild into the family and treats it as a member thereof stands in the place of the natural parent, and the reciprocal rights, duties, and obligations of parent and child subsist, and continue as long as such relation continues." 67 C.J.S., Parent and Child, § 79. We said in Gerdes v. Weiser, 54 Iowa 591, 7 N.W. 42, 43:
"When a man [stepfather] stands in loco parentis he is entitled to the rights and subject to the liabilities of an actual parent * * *."
See also Rule v. Rule, 204 Iowa 1122, 216 N.W. 629.
Here it is admitted Mr. Copp, the stepfather, took the child into his home and for a period of two and a half or three years stood in loco parentis to the boy and fulfilled all of a parent's obligations to him. The relationship was such that he was entitled to the child's custody at least as against all but a natural parent. 67 C.J.S., Parent and Child, § 80; Ex parte Flynn, 87 N.J.Eq. 413, 100 A. 861. The status does not terminate on the death of the natural parent. Under all authorities it continues as long as the relationship continues. The legislature has said the consent of the parent having the care and providing for the wants of the child is required. I think the fair construction, and the one that carries out the manifest legislative intent, is that the term "parent" includes the recognized legal relationship of a stepparent who has stood for years in loco parentis to the child.
IV. Very little of Division II of the majority opinion is devoted to a discussion of whether the stepfather was entitled to notice of the adoption proceedings. In the last few paragraphs of the division the majority holds in effect that since the stepfather's consent was not necessary then he has no such interest as requires notice to him; citing only State ex rel. Sheedy v. District Court, supra. Under the admitted facts the stepfather had provided for the care and wants of this five year old child for the past two and a half or three years. The legal effect of the relationship was that he was entitled to the custody of the boy as against the Keiths or any other persons seeking to adopt the child. And yet the majority sanctions a secret adoption proceeding which will give others custody rights. The first Mr. Copp learns of the proceeding is when the Keiths arrive at *156 his home, armed with a certified copy of the adoption decree and demand that the child be turned over to them. Mr. Copp had actual and legal custody of the child. The majority holding that a child can be adopted without any notice to a party having actual and legal custody is shocking to my sense of justice. Section 600.4, Code 1950, I.C.A., provides as follows:
"When the parents of any minor child are dead or have abandoned him, and he has no guardian in the state, the court may order such notice of a hearing on such petition as he may determine or such notice may be waived. The Court shall provide for such hearings in adoption proceedings as may be necessary and shall prescribe notice thereof. All hearings in adoption proceedings shall be private and conducted only in the presence of those persons designated by the Court. Upon the time of filing said petition of adoption, such notice of pendency of adoption proceedings as the Court shall prescribe shall be given to a divorced parent not having custody of the child."
The majority fastens on the last part of the above statute and points out that the only requirement of the statute is a notice to the divorced parent who does not have custody. As the majority reads the statute it requires notice to one who has no custody but does not require any notice to one who has actual and legal custody of the child. The statute is broad. It provides for a trial court determination of proper notice in a case where the parents are dead or have abandoned the child. It provides the trial court shall prescribe the notice for the hearings in the adoption proceedings. Should this court uphold any determination of the trial court that the actual and legal custodian in a neighboring county need not be notified of the adoption proceeding? I think not. The legislature did not spell out exact directions as to the notice that should be given in every case. It left it to the courts to prescribe a proper notice. The only proper notice the court could prescribe would be one that would not deprive the actual and legal custodian of the child without an opportunity to be heard. Suppose the custody of a child was awarded to its aunt in a divorce proceeding between the parents and thereafter the parents died. Would the majority hold there could be a valid adoption proceeding in another county with no notice to the aunt? The majority seems to think it would be "judicial legislation" to hold the statute required notice to the stepfather. I feel the legislature told the courts to prescribe the proper noticeone that accords with long established due process and judicial procedure. It may well be that in many cases no notice to a stepfather would be required or necessary for the mere relationship of stepparent and child gives the former no right of custody. It is that relationship plus the stepparent's receiving the child into the family and doing the things a parent would do that entitles the stepparent to a parent's custody and control over the child. Here it is admitted, and the trial court held, the stepparent did receive the boy into his family and was in loco parentis to the child. It is a weak answer to the argument that the court should have ordered notice to the stepfather to say the statute did not list stepfathers as entitled to noticethat the statute only requires notice to a divorced parent out of custody and "if notice to a stepfather * * * having at the time custody of the child were deemed essential, the legislature would surely have said so." If the legislature only intended to require notice to a divorced parent out of custody the last sentence of Section 600.3, Code 1950, I.C.A., would have been sufficient. This portion of the statute was an amendment to the original statute. Chapter 281, Par. 4, Acts of the 52nd G.A., 1947. According to the majority there was no requirement of notice to anyone before the amendment. I think the statute always required notice to all persons who would be affected by the adoption decree, such as relatives and others who had actual custody of orphaned or abandoned children but in any event it required notice to any person who had actual custody and custodial rights recognized by law. I feel the legislature thought it could safely leave to the *157 courts the determination of what would be a proper notice in each case.
This is the first time this statute, Sec. 600.4, has been before us. In the case of In re Adoption of Karns, 236 Iowa 932, 20 N.W.2d 474 (which probably prompted the amendment) we held the question of the divorced father's right to notice was not raised in the lower court. The full force of the majority interpretation of the notice statute is that no notice is ever required on anyone when the child is an orphan or abandoned (except on a divorced parent out of custody) and proposed adopters can secure an adoption decree ex parte, though the actual and legal custody has for a period of years been in another person. I feel the statute, properly construed, leaves the determination of proper notice to the court, and any determination that the actual and legal custodian of a child whose parents are dead or have abandoned him, need not be served with notice of adoption proceedings, should be reversed.
The case of Holmes v. Derrig, 127 Iowa 625, 103 N.W. 973, 974, is much in point. There the grandfather stood in loco parentis to the child. We recognized that the adoption statutes then existing if literally construed would warrant an adoption by others without notice to or consent of the grandfather but we reversed an adoption decree obtained without the notice or knowledge of the grandfather, stating:
"* * * in the absence of extreme neglect of natural and legal duty courts will always be slow in refusing recognition to the paramount right of the parent, or of one who is by nature in loco parentis."
V. In his petition to vacate the adoption decree Mr. Copp alleged the adoption was void because the child had not lived in the adopters' home for the statutory period. Section 600.2, Code 1950, I.C.A., provides: "No [adoption] petition shall be granted until the child shall have lived for twelve months in the proposed home. Such period of residence may be shortened by the Court upon good cause shown when satisfied that the proposed home and the child are suited to each other."
In their petition for adoption Mr. and Mrs. Keith alleged: "Your petitioners further state that the child has been under their care for twelve months prior to the filing of this petition as required by Section 600.2 of the 1950 Code [I.C.A.]." The majority seems to feel there is nothing wrong or false about the allegation because the statute does not mean the twelve-month period immediately prior to filing the petition. According to the majority any twelve-month period in the child's life would satisfy the statute even though, as here, the proposed adopters had not provided for the child for years. Indeed there is nothing in this record that shows the child was ever in their home without its mother except for one visit during three or four months and perhaps a few weekends when the child was two or three years old. It was never in the home for the purpose of adoption. In State v. Stemmler, 241 Iowa 417, 41 N.W.2d 21, we spoke of this residence requirement as the "probationary period" and pointed to the fact that the legislature had by Chapter 281, Sec. 2, 52nd G.A., 1946, lengthened this probationary period from a period of six months to one full year. I think it is perfectly apparent the statute means the petition for adoption shall not be filed until the child has been in the proposed adopters' home for the purpose of adoption for the twelve-month period immediately before filing the petition. These proposed adopters do not allege the child was in residence in their home. They do allege he was "under their care." The trial court specifically found in the adoption decree that the mother had sole care of the child and provided for his wants until her death on December 23, 1951, a few weeks before the petition was filed. Moreover, the petition to vacate filed by Mr. Copp recited that the child had, from the time of his marriage to Mrs. Copp, resided with them continuously to the date of the mother's death and after that with the stepfather. The motion to dismiss filed by the Keiths admitted these facts. This probationary period is of tremendous importance in all adoption proceedings. It is for the purpose of determining the suitability *158 of the child to the home and the home to the child. State v. Stemmler, supra. As somewhat in point see In re Adoption of Cannon, Iowa, 53 N.W.2d 877. The majority nullifies the requirement entirely by holding any twelve-month period, even a year of infancy of a five year old child will satisfy the statute.
Perhaps this holding of the majority is dictum but as such it stands as some authority for the interpretation stated. The majority seems to hold that the question of the necessity of the residence of the child with the adopting parents is not raised by proper assignment of error in this court. As the majority states, Mr. Copp did, in his petition to vacate, allege the adoption decree was void upon that ground. And it is true as the majority states, the assignment in this court is that the adopters perpetrated a fraud on the court by failing to advise the court of the true situation with respect to the child's residence in the adopters' home. Perhaps it is not raised exactly as it should be. Mr. Copp was in a little difficult situation. Undoubtedly this point was argued to the trial court. But the trial court made no ruling on the specific point. After holding Mr. Copp was not a parent; that his consent was unnecessary; and that he was not entitled to notice, the trial court observed Mr. Copp complained of other irregularities in the proceedings, but held in view of the prior holdings they were "obviously of no concern to the petitioner." In other words, having held the stepfather in loco parentis to the child was a complete stranger to the adoption proceedings, he had no right to assert the adoption decree was void for any reason. Perhaps this failure to rule would not have foreclosed an assignment of error in this court but in any event one assignment does raise the question of the statutory residence for the purpose of adoption and both sides argue the question. The Keiths argue the statute provides for any twelve-month period as the majority construes it, while Mr. Copp argues the statute requires residence in the proposed adopters' home for the twelve-month period immediately before the filing of the petition.
I think it far too technical to hold that a point which was raised in the court below and which is mentioned in one of the assignments of error, and thoroughly argued, is not before us.
VI. I will say but little on the constitutional question disposed of in the last division of the majority opinion. The majority states it was not raised in the lower court. After the motion to dismiss filed by the Keiths was sustained, Mr. Copp amended his petition to vacate the decree of adoption, as he had a right to do, and raised the additional constitutional question. The record does not show any ruling by the court after the filing of this amendment. True it is not shown the amendment was brought to the attention of the court but the court had already held Mr. Copp was a mere stranger with no rights to attack the decree of adoption. It certainly would have been an idle gesture to bring the amendment to the court's attention where undoubtedly it would have met the same fate as other asserted irregularities which the trial court said were "obviously of no concern to the petitioner (Mr. Copp). In Holmes v. Derrig, supra, where we reversed an adoption decree without notice to the one who stood in loco parentis to the child, we stated:
"A statute by which a parent or other natural guardian could be deprived of his child without notice or opportunity to be heard would, without doubt, be held void as an unconstitutional deprivation of right without due process of law; and it is the duty of the court, if the language of the act be fairly capable of it, to give it a construction by which its validity can be upheld." [127 Iowa 625, 103 N.W. 975.]
I would reverse.
HAYS, J., joins in this dissent.
SMITH, Justice (dissenting).
I cannot agree to an affirmance here. The result reached may or may not be desirable but I think the trial court ignored an important and mandatory statutory requirement. *159 Section 600.2, Iowa Code 1950, I.C.A., provides:
"No petition shall be granted until the child shall have lived for twelve months in the proposed home. Such period of residence may be shortened by the Court upon good cause shown when satisfied that the proposed home and the child are suited to each other. The State Department of Social Welfare may, and upon order of the Court shall, make a further investigation during the period of residence * * *." Emphasis is supplied as to words thought to be pertinent here.
I would construe this to mean a probationary residence after the adoption petition is filed and before it is granteda residence after the home is proposed as an adoptive home and during which the welfare worker may, or must if the court so directs, investigate and report as to suitability and as to whether the proposed adoption is for the best interest of the child.
True, the court may for good cause "shorten" the period of residence "when satisfied that the proposed home and the child are suited to each other." Doubtless earlier residence and association before adoption was contemplated might constitute such good cause to "shorten" (but not entirely waive) the probationary period.
Our recent decision in In re Adoption of Cannon, 53 N.W.2d 877, assumes the statute contemplates a probationary residence during pendency of the adoption proceeding and before final order is entered. That case illustrates the feasibility of such procedure. It is worthy too of some consideration in determining legislative intent that when a child welfare agency places a child for adoption a written contract providing for a probationary period is required. Section 238.40, Iowa Code 1950, I.C.A.; State v. Stemmler, 241 Iowa 417, 41 N.W.2d 21.
I am not prepared to argue the adoption decree here was void for failure to comply with the statutory requirement as to residence. It was at least subject to being vacated or modified under Rule 252(b), R.C.P., 58 I.C.A., on the ground of "irregularity or fraud practiced in obtaining" it. The petition to vacate was filed promptly and alleges sufficient to require reopening of the case and the allegations were sufficient to require a re-trial at which the court could make a determination as to the best interest of the child.
On these considerations I would reverse.
OLIVER and HAYS, JJ., join in this dissent.