[Filed December 3, 1888.]

HENRY GERBER, APPELLANT, v. GEORGE F. BAUER-
LINE ET AL., RESPONDENTS.

SUPPORT OF STEP-CHILD— STEP-FATHER. — The law does not impose upon a
step-father the duty of supporting a step-child, nor is he by virtue of such
relation entitled to demand its services.

STEP-FATHER — IN LOCO PARENTIS. — If a step-father voluntarily assumes the
care and support of a step-child, he stands *in loco parentis* to such child, and
the presumption then is that they deal as parent and child, and not as
master and servant.

STEP-FATHER — GUARDIAN. — If a step-father never assumed said duty but
qualified as the guardian of the step-child, and as such guardian furnished
it with necessaries and charged for them in his accounts as such guardian,
the presumption that he acted or intended to act *in loco parentis* is rebutted.

IMPROVEMENTS ON MINOR'S PROPERTY — CLAIM OF GUARDIAN FOR. — The
ordinary rule is, that a guardian will not be allowed for permanent im-
provements placed by him on a minor's property without authority.

APPEAL from Benton County.

*John Burnette* and *W. S. McFadden,* for Appellants.

*J. W. Rayburn,* and *Stott, Waldo, Smith, Stott, & Boise,*
for Respondents.

STRAHAN, J.—Some years ago John Bauerline died in-
testate in Benton County, leaving a widow and two minor
children, George F. Bauerline and Margeret Bauerline,
now Margaret Carter. The present appellant, Henry
Gerber, intermarried with the widow, and soon thereafter
was appointed and qualified as the guardian of said
minors. The guardian filed an inventory of the property
of said wards, from which it appeared they owned the
following property:—

Personal property............................... $175
Real property: Lots 1 and 2 in block 8, Dixon's Addi-
    tion to the city of Corvallis, and fixtures thereon. 1,500

Total.........................................$1,675

At the time said guardian qualified, George F. was two and a half years old, and Maggie was in her fifth year. It appears that after said guardian qualified as such he clothed, boarded, and in every way cared for said wards until after they attained their majority. About April, 1887, said wards, having attained their majority, filed an application in the county court of Benton County, Oregon, for a citation to said guardian requiring him to file a final account of his proceedings. In obedience to said citation the guardian filed his final account. Objections to the same were duly filed by said wards, and depositions were taken before a referee by each of said parties on the issues raised by said objections, and the denials thereof by the guardian. Upon the final hearing in the county court, that court found that neither party pay to the other anything; that the guardian's accounts be finally settled; that said guardian be discharged from any further duties of his said trust; that his bondsmen be exonerated; and that each party pay half the costs and disbursements.

From this decree the wards appealed to the circuit court, where the case was regularly heard on the transcript and evidence accompanying it. It appears from the record that said guardian never filed but one account until his final account was filed. This account was filed March 21, 1871. By this account he presented a claim to the county court for the maintenance of George F. and Maggie, a part of which was then allowed. The circuit court found in favor of Maggie in the sum of $354.07, and in favor of George F. in the sum of $497.07, and decreed accordingly. From this decree the guardian has appealed to this court. Said guardian's account consists of very numerous items of debit and credit. The debit side of the account is made up of the amount of the inventory; Rents received on property until March, 1871, $610; cash

received on insurance of property burned in 1871, $983; money received from sale of some brewery fixtures saved from the fire, $100; amount received from sale made by order of county court of certain lots which had been admeasured to Mrs. Gerber as dower, and in which said minors owned a remainder, making a total of $3,818. The credit side of the account consists of numerous credits for money paid for taxes, insurance, improvements of a permanent nature on wards' property, and for the maintenance and support of said wards, amounting in the aggregate to the sum of $7,875.20. Deducting debits from credits leaves a balance in favor of the guardian of $4,057.26.

1. I have read and carefully considered the evidence in support of and against the various items of debit and credit, and do not consider that a particular reference to them is necessary to a proper determination of this cause. It was conceded on the argument that if the wards are chargeable in this accounting with what the evidence manifestly shows their maintenance was reasonably worth, from the time of the appointment of the guardian to the filing of the final account, there would be nothing due from said guardian to either of them. Not only so, but the amount of such an allowance would absorb their entire estate.

But counsel for respondents claim that no such allowance can or ought to be made, for the reason that, when Henry Gerber married the mother of these wards, he stood *in loco parentis* to them, and the law will not permit him to make such charge. When Gerber became the step-father of these children, the law did not impose upon him the duty of supporting them or make him liable therefor. Neither did he become entitled to the proceeds of their labor. The law seems to be that if a step-father voluntarily assumes the care and support of a

step-child, he stands *in loco parentis*, and the presumption then is, that they deal with each other as parent and child, and not as master and servant, and in such case the ordinary rules applicable to parent and child will apply.

But if the facts tend to show that such step-father never voluntarily assumed that duty, but that he qualified as the guardian of such minors, and in that capacity furnished them with necessaries, and charged them for the same in his accounts as such guardian, the presumption that he acted or intended to act *in loco parentis* is rebutted. In such case, no good reason appears to me why the burden of the support of the wards should fall upon the step-father rather than that they should be supported out of their own property, or why such guardian should not be permitted to apply the necessary amounts to their support out of their estate. The lowest estimate that could be made for their support more than absorbs the amount found in their favor by the circuit court.

This view of the subject disposes of the claim of said wards. On the other hand, I do not think their estates should be burdened with charges for improvements, however permanent or meritorious they may be. No doubt the guardian acted in the utmost good faith in making them, but he has had the use of them, and no charge is made against him for rent, or for the use of the real estate while he occupied it. In addition to this, they were placed there without legal authority. Whether there might not a case arise where an allowance for improvements might be made, we do not now decide or consider. It is sufficient for the disposition of this case to hold that no such controlling equities appear in support of this claim. Whatever merit there may be in the claim for improvements is fully met and counterbalanced by other equitable considerations presented by the claims of the

wards. This conclusion enables them to receive their estate in its improved condition, freed from any claim on account of such improvements.

What has been said leads to the reversal of the decree of the circuit court, and to an affirmance of the decree of the county court, and it is so ordered.