DOROTHY D. SMILEY, by her next friend, JANE S. HILLOCK, v. ALEX. McINTOSH, and SARAH McINTOSH, Appellants.

**Adoption of children:** RESIGNATION OF GUARDIAN: REINSTATEMENT.
1   The resignation of the guardian of an infant, and the appointment of another who fails to qualify will not operate to reinstate the old guardian without a new appointment, and a parent in the interim may legally enter into articles of adoption, unless incapacitated.

**Custody of infant:** PROPER PARTIES: EVIDENCE. The evidence in a
2   habeas corpus proceeding, to determine the right to the custody of an infant child, is reviewed and held to support the contention of its adopted parents on the questions of fitness of the parties and the best interests of the child, notwithstanding the adverse finding of the trial court and the rule that the appellate court will uphold any finding of the trial court which is supported by the record.

*Appeal from Linn District Court.*— HON. W. G. THOMPSON, Judge.

MONDAY, JANUARY 15, 1906.

THIS is a proceeding by *habeas corpus* to determine the right of defendants to the custody of the plaintiff. The trial judge awarded the custody to Jane S. Hillock, who instituted the suit as next friend, and the defendants appeal. — *Reversed.*

*E. A. Johnson,* for appellants.

*Smith & Smith,* for appellee.

McCLAIN, C. J.— The mother of the infant plaintiff died within two months after the plaintiff's birth, and prior to her death had executed a will in which she devised and bequeathed all her property to her four children, one of

whom was the plaintiff, and nominated her mother, Mrs. Hillock, to be guardian of such children, both of their persons and their property. In July, 1901, which was about two months after the death of Mrs. Smiley, Mrs. Hillock was appointed such guardian, and subsequently brought an action against the father of these children to compel him to pay a sum of money for their support. In this proceeding a stipulation of settlement was entered into, in which it was agreed that a sum of money should be paid to Mrs. Hillock by the father; that Mrs. Hillock should resign the guardianship of the children, and a suitable person be appointed as guardian in her stead; and that the child Dorothy should remain with Mrs. Hillock " for the present." In pursuance of this agreement of settlement Mrs. Hillock filed a resignation of her guardianship, and the person named as executor in the will of Mrs. Smiley was appointed guardian, but failed to qualify. Thereupon Mrs. Hillock, in July, 1903, again applied for appointment as guardian of the children, including Dorothy, and such appointment was made; but in the meantime, in April, 1903, the father of the children had executed an instrument, joined in by these defendants, by which defendants adopted Dorothy as their daughter, which instrument was duly recorded.

So far as we can see, the proceedings for the adoption by defendant of the infant plaintiff were in every way regular, lawful and effectual, being concurred in by the necessary parties, and unless, as is claimed, the father of the plaintiff was incapable of executing a valid instrument of adoption, by reason of his previous abandonment of his children and the guardianship awarded to Mrs. Hillock, or on account of intoxication at the time the instrument was executed, there is no legal ground for interfering with the custody of the defendants as adopting parents, unless the interests of the child require it. The evidence tends to show that the

1. ADOPTION OF CHILDREN: resignation of guardian: reinstatement.

father had mistreated the mother of the children and failed to support them, but it falls far short of showing a legal abandonment of his right as father to the custody of the children. As to the guardianship, it is sufficient to say that at the time the instrument of adoption was executed there was no legally appointed guardian, for in pursuance of the stipulation Mrs. Hillock had resigned, and another guardian had been appointed. True it is that the new guardian had not qualified, but that fact could not operate to reinstate Mrs. Hillock as guardian without a new appointment. When the court named another guardian, it *ipso facto* accepted the resignation of Mrs. Hillock. Therefore it is unnecessary to discuss the question whether the mother could by her will deprive the father of his right to the custody of the children, or whether any guardianship proceedings to which he was not a party would be effectual to deprive him of his rights as surviving parent.

The contention that the father was incapacitated by intoxication at the time the instrument of adoption was executed is fully negatived by the evidence. His reputation for sobriety was not in issue. If it had been, we might cheerfully concede that it was not made out on the record; but certainly the evidence does not show that he could not have had sober moments, and those persons who were present at the time the instrument was executed all testify that he was sober at that time. We find nothing, therefore, in the record to impeach the lawfulness of the proceedings by which the infant plaintiff was adopted by the defendants, and, as a matter of legal right, the defendants should not have been deprived by the judgment in the *habeas corpus* proceedings of the custody of the infant plaintiff, unless they are unfit persons, so that the best interest of the child require that its custody be given to some other person.

Conceding that in such a proceeding the court may go into the question as to the fitness of the respective claim-

ants to have the custody of the infant awarded to or con-

2. CUSTODY OF INFANT: proper parties: evidence.

firmed in them, and that the best interests of the infant are to be considered in determining the right to its custody (*Fouls v. Pierce,* 64 Iowa, 71; *Kuhn v. Breen,* 101 Iowa, 665), we find no evidence in the record to justify the action of the court in ordering that this infant be taken away from the defendants in whose custody it was found at the institution of these proceedings, and who are legally entitled to its custody by the instrument of adoption, and awarding such custody to Mrs. Hillock, the grandmother, who appears as her next friend. Prior to the death of her daughter, the mother of this infant, Mrs. Hillock had been convicted, under another name, of the crime of keeping a house of prostitution, and had been sentenced to imprisonment in the penitentiary. It seems that at the time of her daughter's death she was under bond on an appeal by her to this court. The sentence was, however, affirmed, and for some time Mrs. Hillock, with her husband (not the grandfather of this infant), were going from place to place in the eastern part of the state, endeavoring to escape arrest by the officers for the purpose of enforcing the warrant of commitment to the penitentiary. About a year after the death of her daughter she came with her husband to the home of defendants, bringing with her this infant grandchild and an infant son of her husband by a previous marriage.

After these defendants had for some weeks entertained these people Mrs. Hillock was arrested and sent to the penitentiary, and her husband was committed to the county jail in Linn county to serve a sentence for the illegal sale of intoxicating liquors. The children remained with the defendants. About the time that Mrs. Hillock was released from the penitentiary after serving her sentence, the father of the infant plaintiff, no doubt to prevent Mrs. Hillock from gaining possession of the child, suggested to defendants that he wished to have her adopted by them, and

the instrument of adoption was executed.   The father was, perhaps, not a proper person to have the custody of the child, but we do not understand how that fact can in itself render the adopting parents improper persons to have such custody, or impeach the validity of the instrument of adoption.   Mrs. Hillock voluntarily left the child with these defendants, and, as a witness, testifies that the child has been well treated.   There is no evidence whatever that the defendants are improper persons, save as that fact might be indicated by the testimony of the infant son of Mr. Hillock, ten years of age at the time his testimony was given, in which it is narrated that on one occasion, while he was still with the defendants, there was a drunken orgy at defendant's home, during which the infant plaintiff was induced to drink half a glass of whiskey, and subsequently half a glass of beer, resulting in her intoxication and subsequent illness.   The witness declared that the baby (who was at that time between two and three years old) drank all the liquor thus given to her, and was not seriously affected by it, except that after being put to bed and to sleep she was taken ill.   He says they gave her the beer first, and then gave her the whiskey, " and mixed the drinks on her."

It occurs to us that this testimony is too incredible in itself to be entitled to serious consideration, but it is so completely negatived by the defendants and their witnesses that it is not entitled to any weight.   The defendants admit that on one occasion a quantity of beer was drunk in their house on their son's birthday, but beyond this nothing which could be considered by any one as improper was established with reference to the conduct or good character of the defendants; and we cannot believe that it would be for the best interests of the infant to take her out of the custody of these people and turn her over to Mrs. Hillock. The defendants are shown to be self-supporting and industrious people, and, while not possessed of as much property

as Mrs. Hillock, we think they are quite as capable of bringing up the child in the proper way and to her best interests.

If the judgment of the trial court awarding the custody of the child to Mrs. Hillock was based on a finding that the best interests of the child required that it be taken from the lawful custody of the defendants, such finding was wholly without support in the evidence, so far as the fitness of Mrs. Hillock is involved. It is true that in this proceeding the finding of the lower court as to the facts has the effect of a verdict of a jury. *Shaw v. Nachtwey,* 43 Iowa, 653; *Kline v. Kline,* 57 Iowa, 386; *Kuhn v. Breen,* 101 Iowa, 665. No doubt we are bound to presume any finding of facts supported by the record which would warrant the judgment. *Fouts v. Pierce,* 64 Iowa, 73. But a finding that the best interests of the child require that she be taken from the defendants, who are by adoption *prima facie* entitled to her custody, and given into the custody of Mrs. Hillock, would be wholly without support in the record. It appears beyond question that the custody of the plaintiff should not have been given to Mrs. Hillock.

The decision of the trial court is therefore *reversed.*