IN RE ADOPTION OF RANDALL LEE CHENEY.

ARLO A. COPP, appellant, v. DAVID E. KEITH et ux., appellees.

No. 48187.

(Reported in 59 N.W.2d 685)

JULY 17, 1953.

REHEARING DENIED SEPTEMBER 25, 1953.

Geiser, Donohue & Wilkins, of New Hampton, for appellant.

Harris, Van Metre & Buckmaster, of Waterloo, for appellees.

SMITH, J.—A former affirming opinion, filed December 16, 1952, has been withdrawn on rehearing. It will be found reported in 56 N.W.2d 145.

The child, Randall Lee Cheney, was born August 11, 1946, according to the adoption petition (filed January 9, 1952). His "address" was given as Sumner, Iowa, which is in *Bremer* County. The adoption petitioners, David E. Keith and Margaret U. Keith, reside in *Black Hawk* County where the proceeding was brought.

The petition states the child's mother, "Lena Borneman", was divorced from the child's father, William Cheney, and that she was, until her death December 23, 1951, the parent having the sole care and right to provide for the child's wants. There

is, in the petition, no mention of her marriage to Arlo A. Copp, appellant here, nor is he mentioned as having present custody of the 5½-year-old minor.

The adoption petition alleges that William Cheney, the father, has never furnished care and support for the boy, is not a resident of Iowa, that his whereabouts is unknown and that personal service cannot be had upon him in Iowa. The proposed adopters also allege "the child has been under their care for twelve months prior to the filing of this petition as required by section 600.2 of the 1950 Code."

Immediately upon the filing of the adoption petition the court set it for hearing February 1, 1952, and ordered that notice thereof to William Cheney be once published in the Waterloo Courier "not less than 10 days prior to said hearing"; also that the Family Service League of Waterloo "proceed to verify the statements made in the aforesaid petition and make such other inquiry and investigation as provided by section 600.2, Code of 1950, and report findings to this court forthwith."

On February 1, 1952, there was filed a sworn statement by David E. Keith to the effect that he was the guardian of the person of the minor and "consented" to the adoption of the child by himself and his wife, the other petitioner. There is no allegation the boy was in his care.

The same day the report of the Family Service League was filed, which seems to have been the only evidence taken. Its contents are immaterial to our present inquiry. The decree of adoption was at once entered.

On March 26, 1952, Arlo A. Copp filed a petition to vacate that decree, alleging Randall Lee Cheney was the child of Lena Cheney, that she and petitioner Copp were married approximately three years before her death and that the boy resided in their home with them thereafter until she was killed in an auto accident December 23, 1951, in which both petitioner and the boy were injured and that both were thereafter in a West Union, *Fayette* County, hospital for a "considerable time."

Petitioner alleges that since the marriage of himself and the boy's mother "and at all times up to and including the date of her death the said Randall Lee Cheney was in the custody of the

1184

said Lena Cheney Copp and your petitioner and that they provided for his maintenance and support and since the death of the said Lena Cheney Copp" the boy "at all times remained in the custody of your petitioner and was supported by him" and that both were still in the hospital when the adoption petition was filed.

Petitioner Copp further alleges he learned, on or about January 18, 1952, while he was convalescing, of a *guardianship* petition of David E. Keith filed in *Butler* County. He sets out correspondence between his own and Mr. Keith's attorney concerning the proposed guardianship but alleges he knew nothing of the then pending *adoption* proceeding until after the decree when Mr. and Mrs. Keith called on him, presented a certified copy of the adoption decree and demanded custody of the boy.

An "answer and resistance" was filed by the Keiths on May 5, 1952, and May 27 the court on their motion for separate hearing on issues of law (probably under rule 105, R.C.P.) entered "judgment and decree" denying the petition to vacate. From that ruling this appeal is taken.

In the meantime, on May 15, 1952, a belated "consent to adoption" had been filed, purporting to be signed by the boy's father, William Cheney, before a justice of the peace in Massachusetts.

The case is not before us on the merits to determine as to the propriety or desirability of the proposed adoption or as to the suitability of the proposed adoptive parents. Nor is the question of the best interests of the child here involved. There is the sole legal inquiry as to the sufficiency of appellant-Copp's petition to vacate the adoption decree and his right to maintain it. He urges various contentions but we shall dispose of the case on those we deem fundamental.

I. We think there is no doubt the stepfather pleaded facts sufficient to establish his right to appear and litigate the question. We said in Gerdes v. Weiser, 54 Iowa 591, 593, 7 N.W. 42, 43, 37 Am. Rep. 229: "When a man stands in loco parentis, he is entitled to the rights and subject to the liabilities of an actual parent, although he may not have been legally compelled to assume that situation. Williams v. Hutchinson, 3

N. Y. 312; Stone v. Carr, 1 Esp. 1; Cooper v. Martin, 1 East. 82; and see Bradford v. Bodfish, 39 Iowa 681."

That such is still the law and is applicable to stepparents who have assumed the role of in loco parentis, see 67 C. J. S., Parent and Child, sections 71–73, 78–80; 39 Am. Jur., Parent and Child, sections 61, 62.

The authorities make clear that the relationship of one in loco parentis does not arise because he is a stepparent but because he lawfully assumes the obligations of a parent: "A stepparent does not, merely by reason of the relation, stand in loco parentis to the stepchild * * *. However, a stepparent who voluntarily receives the stepchild into the family and treats it as a member thereof stands in the place of the natural parent, and the recip-rocal rights, duties, and obligations of parent and child subsist, and continue as long as such relation continues." 67 C. J. S., Parent and Child, section 79; 39 Am. Jur., Parent and Child, section 62.

It has been said the relationship is favored by the law. Coakley v. Coakley, 216 Mass. 71, 102 N.E. 930, 931, Ann. Cas. 1915A 867; and that a presumption arises that a stepfather who voluntarily assumes the care and custody of the child intends to assume the duties and obligations of a natural parent. Gerber v. Bauerline, 17 Or. 115, 19 P. 849.

II. It is proper to state that while adoption is purely stat-utory and had no place in the common law as pointed out by the trial court, our statutes have from earliest times provided for it in some form. Prior to 1927, when the present procedure was provided, no judicial proceeding was required. Adoption was based solely on consent and was consummated by contract between the proposed adopter and someone (usually the parent or parents) authorized to speak for, and able to deliver custody of, the child. The procedure was never adversary. It could not be used as a means of *acquiring* custody of the child but de-pended on custody already existing. As said by the Missouri Supreme Court in Child Saving Institute v. Knobel, 327 Mo. 609, 621, 37 S.W.2d 920, 927, 76 A. L. R. 1068: "The mere fact that respondents [proposed adopters] were financially able and morally fit to furnish the child a good home would not entitle

them to take the child from the legal custodian without any showing that such custodian was not properly caring for the child."

We do not find any decision since that 1927 change in our adoption statutes in which consent and custody were lacking. If a child is not being properly cared for by the one having actual peaceable custody, and the legal custodian is unwilling to yield custody or to consent to adoption, our statutes provide ample machinery for meeting that situation. See Code sections 232.2, 232.21 and other provisions of chapter 232, Iowa Code, 1950. It cannot be met under chapter 600.

█ We believe our present adoption statutes still contemplate and are based on the principle of consent by someone having legal custody, even though not fully spelled out in express, mandatory language. Their affirmative provisions, properly construed, require the preliminary acquisition of legal custody in order to consummate the adoption. They provide no adversary proceeding to obtain such custody.

III. Code section 600.1 requires the adoption petition to state: "* * * if the child be an orphan the name and place of residence of its guardian, if any, and if none, of its next of kin; the name of any licensed child-placing agency as defined in chapter 238 [Code 1946 (now 1950)], to which such child has been permanently committed or released; * * * and the facts disclosing consent as required in this section *and* [emphasis supplied] in section 600.3 [Code 1946 (now 1950)]." Copies are to be sent to the State Department of Social Welfare or other properly designated agency.

Code section 600.2, after first requiring reference of the petition to a proper welfare agency to "investigate the conditions and antecedents of the child * * *", significantly—and *mandatorily*—provides: "No petition shall be granted until the child shall have lived for twelve months in the *proposed home*. Such period of residence may be *shortened* by the court upon good cause shown when satisfied that the proposed home and the child are suited to each other. The state department of social welfare may * * * make a further investigation *during the period of residence* and a final report with recommendations to the court."

(Emphasis supplied.) Compare this language with section 600.2, Code of 1946, before amendment by the Fifty-second General Assembly, chapter 281, section 2.

■ We construe this as requiring a probationary residence in contemplation of adoption and as a preliminary to the decree of adoption as was assumed in In re Adoption of Cannon, 243 Iowa 828, 53 N.W.2d 877.

■ It will be noticed the court is authorized to *shorten,* not waive, the period of residence. Of course residence in the home or some other association or relationship before adoption was ever contemplated might be such "good cause" as would satisfy the court "that the proposed home and the child are suited to each other" and might permit the trial residence to be *shortened.* But we cannot hold it to constitute *compliance* with the probationary residence requirement. A right to waive is granted only in certain cases where there is a certain degree of consanguinity or the petitioner is a stepparent of the child. See last sentence of Code section 600.2.

Code section 600.3 enumerates various cases where consent of persons having lawful custody is required, e.g., parents, guardians, state institution of which the child is a ward or licensed agency to which the child has been released.

■ It is true the Code Editor has headed the section "Consent, when necessary." But there is no language in the statute itself which excludes the necessity for consent in *all* cases where necessary to obtain custody of the child for compliance with the mandatory probationary residence provision of Code section 600.2. As already pointed out, the petition must contain the "facts disclosing consent as required in this section *and* in section 600.3." In other words there may be consent required by the section which is not specified in section 600.3—consent of one in loco parentis having actual lawful custody of the child and "entitled to the rights and subject to the liabilities of an actual parent." Gerdes v. Weiser, supra (54 Iowa 591, 593).

The opening sentence of section 600.3 defines the persons to whom it applies: "No person may assign, relinquish, or otherwise transfer to another his rights or duties with respect

to the permanent care or custody of a child under fourteen years of age except in accordance with this chapter."

The clear purpose of this language is to abolish the former procedure. or method of adoption by mere filing of contract or articles of adoption by the contracting parties. It does not purport to cover all cases where consent is necessary to consummate the judicial adoption, though the editorial title might give that impression.

IV. Code section 600.4 fits into the construction we give the statutes: "When the parents of any minor child are dead or have abandoned him, and he has no guardian in the state, the court may order such notice of a hearing on such petition as he may determine or such notice may be waived. The court shall provide for such hearings * * * as may be necessary and shall prescribe notice thereof. * * *."

The last sentence quoted is a part of what was added to the section in 1947. Even before that time it was held the court had no jurisdiction to grant adoption of an alleged abandoned child without notice. Pitzenberger v. Schnack, 215 Iowa 466, 245 N.W. 713. In that case the adoption granted without notice to the mother (alleged to have abandoned her illegitimate child) was set aside upon her petition. It was held she could not be divested of her natural custodial right without opportunity to be heard.

 Here the stepfather claims custodial rights as one in loco parentis. Though, as we have said, adoption is purely statutory the law defining custodial rights has been established by judicial decisions in absence of statute. Such rights are held to be good as against strangers. Ex parte Flynn, 87 N. J. Eq. 413, 100 A. 861, 863; Wade v. State, 24 Ala. App. 176, 132 So. 71. "Doubtless it is the strict legal right of parents and those standing in loco parentis to have the custody of their infant children as against strangers." Richards v. Collins, 45 N. J. Eq. 283, 286, 17 A. 831, 832, 14 Am. St. Rep. 726. "Only a parent or guardian can establish a superior right of custody and take the infant from the actual custodian who in fact stands in loco parentis." Ex parte Flynn, supra, at page 417 of 87 N. J. Eq..

 Entirely apart from statute appellant's rights here could not be cut off without notice to him. The adoption decree was granted without jurisdiction as to him. Whether the attack he makes on it be considered direct or collateral, he pleaded facts sufficient, if established, to sustain his right to make it. And, as we have already held, if those facts be established the adoption could not be granted.

If he was an improper person to have custody of the child, or by neglect or other conduct had forfeited his right, it was the duty of the state to act and not of private individuals who desired or were willing to adopt the child. No such situation appears here.

V. Our conclusions make unnecessary any consideration of other contentions urged. We do not think there was any intentional fraud or deception practiced upon the trial court in obtaining the adoption decree though there was certainly unfortunate secrecy and haste. Our present adoption procedure differs so widely from that prescribed prior to 1927 that honest differences of opinion could readily arise as to the fundamental basis upon which adoption must rest.

 The safeguards and provisions for determining what is for the best interests of the child, however, require the most careful observance. The statutes are framed on the theory that there must be opportunity for investigation and probationary association which can only exist when there is unquestioned custody for that purpose. We think adoption, under the statutes, cannot be consummated until such custody can be obtained.

The decision of the trial court must be reversed and the case remanded for dismissal of the adoption proceeding unless consent and peaceful custody can be obtained.—Reversed and remanded.

HAYS, C. J., and OLIVER, MULRONEY and LARSON, JJ., concur.

THOMPSON, BLISS, GARFIELD, and WENNERSTRUM, JJ., dissent.

THOMPSON, J. (dissenting)—The majority opinion reverses by holding: 1, The consent of a stepfather having physical

custody of a minor child is a necessary prerequisite to a valid adoption, and 2, the provision of Code section 600.2 requiring a period of residence in the proposed adopting home means such residence must be in contemplation of adoption, is mandatory, and if the residence, although sufficient in time, was not with the purpose of adoption in mind, adoption cannot be granted. I shall discuss these in order.

I. The theory of the majority at this point, as I understand it, is that consent being always necessary, this consent must be given by someone having physical custody of the child. The premise is false, and the conclusion is error. The short answer is that the adoption statutes do not so provide. To sustain the majority's theory it is necessary to amend the statutes by reading into them interpretations not found there either in form or substance.

Three fundamental errors serve as a basis for the majority's holding that the stepfather's consent is necessary before an adoption can be had. They are: (a) That consent is always necessary under our adoption law; (b) adoption and custody are concomitant, and the first cannot be had without the second; and (c) we may read words into our adoption statutes which are not there, either expressly or by necessary implication. These legal fallacies are interwoven in the majority opinion which is supported only by adopting and following a combination of the three.

The majority supports its apparent holding that consent, of someone, is always necessary, by pointing out that prior to 1927, when the present judicial procedure was adopted, adoption was based solely on consent. It is necessary by way of answer to this to say only that the Forty-second General Assembly made a radical change in the adoption laws of the state, and the former statutes furnish no criterion for testing what the law is today. However, since the majority places some emphasis upon the claimed fact that the former statutes were "based solely on consent and [adoption] was consummated by contract between the proposed adopter and someone * * * authorized to speak for, *and able to deliver custody of* [italics supplied], the child", the error in the italicized part of the quote should be pointed out.

Section 3251, Code of 1897, required in certain circumstances the consent of the mayor of the town, or of the clerk of the district court if the child did not live in an incorporated place; section 10497, Code of 1924, called for consent by a judge of the district court in the same situation. It will hardly be contended that any of these officials would usually have custody of the child whose adoption was validated by their consent. This illustrates the underlying fallacy which runs through and taints the entire majority opinion. It starts, continues, and concludes with the assumption adoption must be based on custody. It is repeatedly assumed adoption necessarily determines custody. It does not. It may give the adoptive parents the opportunity to try out the matter of the best interest of the child as against someone holding possession, as by a habeas corpus action, but it is in the latter proceeding the right to custody will be finally decided. Even natural parents have often been denied custody of their own children when it appeared the welfare of the child would be best served by leaving it with the person having possession, and rights of adoptive parents are not greater than those of parents by blood. See Miller v. Miller, 123 Iowa 165, 98 N.W. 631, Fouts v. Pierce, 64 Iowa 71, 73, 19 N.W. 854, and Drumb v. Keen, 47 Iowa 435.

The legislature has provided for consent of certain persons, with certain exceptions not material here, for a residence of the child in the proposed home, and for investigation by an agency of the court. This means the child may not be adopted by entire strangers, as the majority seems to fear. In the case at bar the boy had been in the adoptive home for some years. The legislature rightly placed much confidence in the good judgment of the trial court to permit adoption only in proper circumstances.

Again, it is said in the majority opinion: "We do not find any decision since that 1927 change in our adoption statutes in which consent and custody were lacking." Equally, it is in point to say that we find no decisions in which consent and custody, *except as specified by the statutes*, were held essential. There are many cases in which we have determined some allegedly interested party was or was not covered by the statutes,

so that his consent was or was not necessary. See In re Adoption of Alley, 234 Iowa 931, 934, 14 N.W.2d 742; In re Adoption of Chinn, 238 Iowa 4, 9, 25 N.W.2d 735, in which the consent of the natural father was held not essential; and Rubendall v. Bisterfelt, 227 Iowa 1388, 1390, 291 N.W. 401, in which it was held essential. All of these cases plainly indicate that the question of consent is determined by the statutes, and is necessary only when they so say. Several of the present majority joined in some or all of these holdings. It is true in each of those cases there was a consent by the mother. I cite them only to uphold the point consent is purely statutory.

Perhaps more stress is placed by the majority upon custody. It confuses the questions of adoption and custody, seeming to believe and hold that they are identical. Consent, it reasons, is always necessary, and this consent must be given by someone having physical custody. It will be noted that possession is all the stepfather has here; his right to custody, as distinguished from the fact, has never been determined. There is the question of the right of the guardian, and of the natural father, neither of which has been decided. But, so far as this or any adoption is concerned, possession is made not nine tenths but the whole of the law. This in spite of the fact no other court has ever held custody is an essential element of adoption. No authority so holding is cited by the majority. There are many cases to the contrary, including some of our own. Thus, in Miller v. Miller, 123 Iowa 165, 169, 98 N.W. 631, 633, in which the contest was between the parents by completed adoption and an uncle who had custody of the child, is this language:

"Such being the facts presented by the record bearing upon this phase of the case, we are bound to consider the legal rights of the parties precisely as though James Murphy [the father] was before us, making claim to the custody of his child. This must be true for the reason that by the articles of adoption he could not confer any higher or greater rights than he himself possessed."

To the same effect is Smiley v. McIntosh, 129 Iowa 337, 339,

105 N.W. 577. In Fouts v. Pierce, 64 Iowa 71, 73, 19 N.W. 854, we said:

"But, conceding for the purposes of this case that the plaintiff is legally the adopted parent of the child, it does not necessarily follow that he is entitled to her custody. His rights may be equal to, but clearly they are no greater than, those of the natural parent; and it has been held that such parent is not under all circumstances entitled to the custody of his child. Drumb v. Keen, 47 Iowa 435.

"The modern doctrine undoubtedly is, in controversies of this character, that the controlling consideration is the interest of the child * * *."

In Johnson v. Smith, 203 Ind. 214, 217, 176 N.E. 705, 706, the Indiana Supreme Court said on this identical question: "The only element common to both a proceeding to adopt and one for possession of a child, as here, is its welfare, *and the prosecution of either one to judgment will not bar the other.*" (Italics supplied.)

All of the cited Iowa cases were habeas corpus proceedings involving the custody of the child, and it was definitely held adoption and custody are different questions, and one does not determine the other.

In re Guardianship of Persons and Estates of Santos, 185 Cal. 127, 195 P. 1055, is squarely in point. There was involved the matter of adoption of a minor who was at the time in the custody of a duly appointed guardian. The California law at the time did not require the consent of the guardian, and none was obtained. The California Supreme Court, after repeating the universal rule that adoption is entirely statutory, pointed out their statutes require only the consent of the parents, or one of them; the child, if over twelve years of age; or of a child-placing agency if the child had been placed with it through proper proceedings, said (page 130 of 185 Cal., page 1057 of 195 P.): "It would seem to result from the provisions thus outlined that a minor child may be adopted *even though he is, at the time of the adoption, in the custody of a guardian.*"

(Italics supplied.) The minor there was an orphan, both of his parents being deceased.

In Johnson v. Smith, 203 Ind. 214, 217, 176 N.E. 705, 706, the Indiana Supreme Court said: "A proceeding for the adoption of a child is statutory and ex parte. No adversary is contemplated other than the living parents who may interpose objections in a proper case. Such cases call upon the court to exercise its sound legal discretion for the best interests of the child."

This answers the oft-repeated contention that adoption is not an adversary proceeding. The expression means nothing unless its real significance in connection with our statutes is considered. The statutes say the consent of certain persons or agencies is required. If their consent is not had they may become adversaries, and in practice those who think they have certain rights often are. In fact, in some cases notice is required by the Code, as to a divorced parent not having custody or at the court's discretion where both parents are dead or have abandoned the child.

In Leonard v. Honisfager, 43 Ind. App. 607, 88 N.E. 91, the guardian of a minor appeared in answer to a petition for adoption, alleging his consent was necessary. The Indiana appellate court said the proceeding was entirely statutory, and there being no statutory requirement for consent of the guardian he should not have been permitted to appear in the case or to answer the petition.

In re Santos Estates and Leonard v. Honisfager, both supra, hold that not even a duly appointed guardian having custody has the right to challenge or object to a petition for adoption when such right is not given by statute. The majority in the case at bar permits a stepparent, whose custody is only that of present possession, to exercise an absolute veto over this or any adoption that may be proposed. Concededly, adoption gives some right to claim custody, but it is not decisive; just as custody should not be essential to adoption, and it has never been previously so held.

Some thought is expressed by the majority that an amendment to the adoption laws by the Fifty-second General Assembly

implies support for its "essentiality of custody and consent" theory. The Forty-second General Assembly enacted the substance of the present section 600.3, which sets out those whose consent is required for adoption: The natural parents, if living and if they have not abandoned the child or been deprived of its custody by court process; the adoptive parents; the child itself if over the age of fourteen years; a guardian having care of the child; and a child-placing agency to whom the child has been made over by proper procedure. The Fifty-second General Assembly added this:

"The consent shall be in writing and verified and a copy shall be attached to the petition. The consent shall refer to and be applicable only to the specific adoption proposed by such petition."

This now appears as a part of section 600.3, Code of 1950. The same general assembly also added the language concerning matters to be included in the petition, which the majority emphasizes, i.e., "and the facts disclosing consent as required in this section and in section 600.3." What is important about this is not readily apparent, except that it requires the consent to be in writing and verified, and a copy be attached to the petition. Certainly the amendment added nothing to the list of those whose consent is necessary under the statutes.

The majority, while conceding adoption is purely statutory (see In re Estate of Fitzgerald, 223 Iowa 141, 272 N.W. 117, and Holmes v. Curl, 189 Iowa 246, 178 N.W. 406), proceeds to ignore this universally accepted principle. It says: "We believe our present adoption statutes still contemplate and are based on the principle of consent by someone having legal custody, *even though not spelled out in express, mandatory language.*" (Italics supplied.) Again: "* * * there is no language in the statute itself which *excludes* [italics supplied] the necessity for consent in *all* cases where necessary to obtain custody of the child for compliance with the mandatory probationary residence provision of Code section 600.2." Further it is said: "It does not purport to cover all cases where consent is necessary to consummate the judicial adoption * * *."

Adoption having been unknown at the common law, that which is not found in the statute is not part of the law of adoption. There are no common-law principles or rules to which we can advert when a matter is not covered by statute, so far as adoption is concerned. What, then, is the meaning of the majority's statements above quoted? If the statute "does not purport to cover all cases where consent is necessary", where do we turn to discover what "cases" are omitted? Where do we find anything that says adoption is "based on the principle of consent by someone having legal custody, even though not spelled out in express, mandatory language?" The majority gives no answer for the good reason there is none. Consent is required when, and only when, the statute so says. We have pointed out that under the former statutes which were entirely abrogated by the Forty-second General Assembly, if there was no one otherwise to give consent, as where the parents were dead or had abandoned the child, consent might be given by the mayor of the town, or by the clerk of the court, or by the district court. But now we have in section 600.4 the provision, in such case, the court may order such notice of the adoption hearing as it may determine, or notice may be waived. The contention that consent is always necessary, and it must be given by someone having custody by possession, falls dead before this statute alone. It makes it abundantly evident the legislature had abandoned the concept of consent as the basis for adoption, and meant only to require it where the statute so states. Presumably a small child will always be in the possession of someone; it is difficult if not impossible to conceive otherwise. But when the parents are dead or have abandoned the minor, the procedure is clearly outlined and does not require consent of the one having possession or anyone else.

It should be noted, if the appellant's contention that the guardian here had no right to give consent because he did not have the "care" of the child is sound, we are in exactly the situation provided for by section 600.4. One parent was dead; the other, according to the allegations of both parties, abandoned the child. Yet the majority reads into the statute words importing a requirement for notice to the stepfather having custody

through possession. We have said repeatedly we have no power to read into a statute words not found there. The learned author of the majority opinion, in his dissent in Horn v. Anderson, 234 Iowa 1068, 1079, 13 N.W.2d 693, 698, said with much force:

"By what right or authority may we thus condition and limit the language of the statute? We are concerned here, not with what the law ought to be but with what it is. * * * If the statute is to be modified, the legislature and not we should do it."

In In re Adoption of Alley, supra, page 934 of 234 Iowa, we said: "We are not permitted to write into the statute words which are not there." In In re Adoption of Chinn, supra, page 9 of 238 Iowa, in an opinion written by one of the present majority and concurred in by two others, it is said: "But where the conditions and circumstances prescribed by chapter 600 as warranting adoption are shown to exist, the fact that the adoption may affect certain incidents of a prior divorce decree is not a bar to such adoption." The emphasis was properly put upon the question of compliance with the adoption statutes. In Hansen v. Iowa Employment Security Comm., 239 Iowa 1139, 1141, 34 N.W.2d 203, 204, we said of a request that we write into a statute language not found there: "We have no power to write such provisions into the law." Many other cases might be cited. In view of the fact that the majority is here writing into the adoption statutes words and meaning not to be found there, we should perhaps amend the statement we have no "power" to add to or change an Act of the legislature by judicial fiat to read that we have no "right" so to do. It is apparent that as a court of last resort we do have the "power" if we choose to exercise it. What we are doing here is patently judge-made law for which there is no warrant in the statute, as the majority's statements above-quoted seem to concede.

Appellant's chief reliance in argument here is that a stepparent is a "parent" within the meaning of the statutes. If this is so, then of course he was entitled to notice and hearing. I do not understand that the majority agrees with or adopts this contention. If it does, there would be no need for the stress upon custody, for a parent who has not abandoned his child

is entitled to reject adoption whether or not he has custody. But since the majority places some stress upon the question of the stepparent being in loco parentis, I cannot be sure to what extent it holds with appellant's argument. So, at the substantial risk of being charged with setting up a straw man to be demolished, I must give some attention to the nature of the "in loco parentis" relationship and answer appellant's claim that a stepparent is included by the term "parent" in the adoption laws.

The term "in loco parentis" means standing in the place or stead of the parent. It will be found, upon analysis, this always means in certain respects, or in relation to certain rights or duties. The cases cited by the majority, Gerdes v. Weiser, 54 Iowa 591, 7 N.W. 42, 37 Am. Rep. 229, Bradford v. Bodfish, 39 Iowa 681, and others, all deal with the duty of a stepfather to support his stepchildren so long as they are in his home, and his right to charge them for their support. The general encyclopedia statements that a stepparent stands in loco parentis will be found to refer to the same situations. Various persons may stand temporarily in the relation of loco parentis to a child. Thus, a schoolteacher is said to be in loco parentis while the child is in her care at school. Ballentine's Law Dictionary, 770. But no court has ever held that one standing in loco parentis is a parent within the meaning of the adoption statutes. The Colorado Supreme Court has said: "* * * loco parentis has to do with custody, liability for support, and the like. * * * It is not, as argued, to be likened to adoption. The one is temporary in character, the other permanent and abiding." In re Estate of McCardle, 95 Colo. 250, 252, 35 P.2d 850, 851.

Directly in point factually is the Montana case of State ex rel. Sheedy v. District Court, 66 Mont. 427, 432, 213 P. 802, 804. The mother had died, leaving the child with her widower, its stepfather. An aunt brought adoption proceedings and no notice was given to the stepparent with whom the child had lived for about three years. Adoption having been granted the stepfather brought his petition to revoke, but the Montana Supreme Court said: "Our conclusion is that the expression 'as a parent', as used in section 5846, supra, means not that the husband, by receiving the children into his family and support-

ing them, becomes their 'parent' within the meaning of the adoption statute, but merely that he receives and supports them in the same manner in which their lawful father would receive and support them * * *." The Montana statutes at the time were identical in substance with our present ones. Yet the Montana court found, contrary to appellant's position, that a stepparent is not a "parent", and also, although the question is not discussed, it is evident it found nothing in the statutes requiring consent from someone having custody by possession.

Many other authorities are available, but in the interest of economy of space and reading time I shall quote from only one. It is Coakley v. Coakley, 216 Mass. 71, 74, 102 N.E. 930, 932, Ann. Cas. 1915A 867, also cited by the majority. At page 74 of 216 Mass. we find this: " 'Parent' commonly means the lawful father or mother by blood. It does not lend itself readily to a significance so broad as to include *stepfather or stepmother, or anyone standing in loco parentis.* The use of such other words in common speech of itself has some tendency to indicate a different meaning." (Italics supplied.) See also Marshall v. Macon Sash, Door & Lumber Co., 103 Ga. 725, 30 S.E. 571, 572, 41 L. R. A. 211, 68 Am. St. Rep. 140; Thornburg v. American Strawboard Co., 141 Ind. 443, 40 N.E. 1062, 50 Am. St. Rep. 334; and Heinemier v. Arlitt, 29 Tex. Civ. App. 140, 67 S.W. 1038.

II. The second point made by the majority may be another facet of its "consent of custodian" theory, but it depends again upon writing into the adoption statutes words which are not there. It fastens upon the language in section 600.2 which says:

"* * * No petition shall be granted until the child shall have lived for twelve months in the proposed home. Such period of residence may be shortened by the court upon good cause shown *when satisfied that the proposed home and the child are suited to each other.* The state department of social welfare may, and upon order of the court shall, make a further investigation during the period of residence * * *." (Italics supplied.)

This the majority says means there can be no adoption until the child has been in the home for twelve months, or such shorter

time as the court may determine, *after the adoption has been contemplated.* This means writing into the statute words and meaning not found in it. It is necessary, to support the majority's interpretation, to add words to the first sentence above-quoted so that it will read: "No petition shall be granted until the child shall have lived for twelve months in the proposed home 'in contemplation of adoption.' " Hansen v. Iowa Employment Security Commission, supra, is squarely in point here. There we said at page 1141 of 239 Iowa, page 204 of 34 N.W.2d 203:

"Defendant, Commission, construed the 'three calendar years' to which the statute referred as the three consecutive years immediately preceding the computation date. * * * The construction for which the Commission contends would require us to read into the statute the word 'consecutive' between 'three' and 'calendar years' and also to add the provision that such three years immediately precede the computation date. * * * We have no power to write such provisions into the law."

There appears no good reason why residence "in contemplation of adoption" should be read into the statute. What the legislature had in mind is clearly expressed: It is such residence, whether before or after adoption proceedings are commenced, and whether before or after adoption is considered, as will enable the court to satisfy itself "that the proposed home and the child are suited to each other." It is evident there was no intent the child must be in the adoptive home when the adoption proceedings are begun, for the first words of the entire statute, 600.1, provide they may be commenced in the county "in which he [the petitioner] *or* the child resides." (Italics supplied.)

In the instant case the child had been in the proposed home for some three years before the adoption proceedings were commenced, and so far as the record shows, before adoption was considered. The appellant's attitude being what it is, it was and will be an obvious impossibility to place him in the home to comply with the majority interpretation. I cannot determine whether the majority considers the lack of residence of the child in the home "in contemplation of adoption" as a jurisdictional defect. The writer of the majority opinion, in his dissent when

the first opinion was filed in this case (see 56 N.W.2d 145, 158, 159), said: "I am not prepared to argue the adoption decree here was *void* for failure to comply with the statutory requirement as to residence." (Italics supplied.) If the majority does not hold the alleged defect to be jurisdictional, the question is not before us. In the first instance, if the stepfather is not a "parent" within the meaning of the statutes he has no place in this litigation and has no right to question any claimed irregularities. I have already referred to and cited Leonard v. Honisfager, supra, in which it was held that one not covered by the statutes requiring consent should not be permitted to appear or contest an adoption. Nor am I able to understand the language of the majority opinion which says: "Entirely apart from statute appellant's rights here could not be cut off without notice to him. The adoption decree was granted without jurisdiction as to him." If he was not covered by the statute he had no right to appear and contest, and one who has no place in judicial proceedings cannot be heard to say the court had no jurisdiction over him. I am unable to comprehend what the majority means by the curious (to me at least) statement last quoted. Perhaps it is an offshoot of the basic erroneous theories upon which the majority has proceeded throughout— that adoption necessarily determines custody, and that we are permitted to find something in the law of adoption "entirely apart from statute." The fallacy of these holdings has already been pointed out.

Again, if the majority does not claim the lack of residence of the child "in contemplation of adoption" to be jurisdictional, the question is not before us because it is not raised by appellant's assignments of error. The original majority opinion in this case, now withdrawn, pointed this out (In re Adoption of Cheney, 56 N.W.2d 145, 151, 152), and the reason for the statement that error is not assigned on the point is there fully set out and will not be repeated here. The majority ignores the question. I shall not. Upon appeals in law cases, and in equity actions where only law questions are before us, as here, we are limited to consideration of the errors assigned. Rule 344(a)(3), Rules of Civil Procedure. Citation of authority seems unnecessary

but see Westergard v. Des Moines, Railway Co., 243 Iowa 495, 504, 52 N.W.2d 39; Weimer v. Lueck, 234 Iowa 1231, 1240, 15 N.W.2d 291, and cases cited. And the assignments must be specific. Price v. McNeill, 237 Iowa 1120, 1122, 24 N.W.2d 464; Union Bank & Trust Co. v. Willey, 237 Iowa 1250, 1271, 24 N.W.2d 796. Indeed, we have recently dismissed an appeal in a case involving substantial rights because the assignments of error were insufficient. Broadston v. Jasper County Savings Bank, 244 Iowa 1161, 58 N.W.2d 309.

By what right, then, do we here consider errors not properly assigned, or indeed not assigned at all? Certainly we must not do it for the reason that a more desirable result may thereby be achieved. Again I quote from the language, of the writer of the present majority opinion, in Horn v. Anderson, supra, 234 Iowa at page 1079, 13 N.W.2d at 698: "But in deciding his [this] case we should follow the law as already established and not attempt to modify it for the purpose of the particular case." The words are appropriate and applicable here. I find no justification for applying the rule to one litigant and not to another; for dismissing the appeal in the Broadston case for want of proper assignment of error and ignoring an equally flagrant failure in the case at bar. Surely the law should be the same for all men.

Since, however, I cannot be sure the majority does not now consider the residence requirement jurisdictional, and since jurisdiction of the subject matter is always before the court, even though not properly raised by either party, I must further discuss the question. It has been pointed out the statute requires only that the child must have lived for twelve months in the proposed home, so the court may determine whether the home and the child are suited to each other. It does *not* say such residence must have been *immediately before* the filing of the petition or the granting of the decree, or *after* the filing of the petition and before the decree, or that it must have been in *contemplation of adoption*. It is true the court may make a *further* investigation through its appointed agent or agency during the period of residence. This, however, is optional, and is clearly intended to provide for cases where there has been no "period

of residence" prior to the filing of the petition, or where the court, in its discretion, finds a further residence period and investigation are needed to enable it to make its determination whether the home and the child are suited to each other.

Jurisdiction in adoption cases is determined by jurisdiction over the child and the adoptive parents, together with such others as the statute may designate whose consent is required or whom it designates as being entitled to notice. Some cases have limited the rule even further by holding that the child and the adoptive parents are the only ones needed to give the court jurisdiction. It is said in Stearns v. Allen, 183 Mass. 404, 408, 67 N.E. 349, 351, 97 Am. St. Rep. 441: "Although the status of the natural parent in reference to the child is affected by the adoption, the jurisdiction which gives the right to decree adoption is jurisdiction over the adopting parents and the child * * *." It is again appropriate to say that lack of jurisdiction, if that is what the majority opinion holds, can be rationalized only by adding to the statute words which are not there, either literally or by fair implication.

It is in point to say the majority holding, if it is such that any residence no matter for how long a time must be in contemplation of adoption, and otherwise lack of jurisdiction of the subject matter appears, will invalidate many adoptions now existing in Iowa. In many cases district courts have adopted the plain meaning of the statute, unadorned by judicial legislation, and have entered decrees based upon a residence of sufficient length but which was not had before the intent to adopt was formed or made known. They have proceeded upon the wording of the statute which makes it clear the residence requirement is for the sole, reasonable and *express* purpose of enabling the court to determine whether the home and the child are suited to each other. All of these adoptions will now be void upon the filing of the majority opinion if it is interpreted as holding lack of jurisdiction for lack of proper residence, which is the only way we have the right to consider the question because of the lack of properly assigned error. Some of the adoptions so voided may perhaps be remedied by new proceedings; others, because of death, insanity or other reasons cannot be. Rights

of inheritance and support which have been thought firmly settled will thus be overturned. If that is what the adoption statutes say we must follow them no matter who may be harmed or what rights abrogated. But I find nothing in the statute justifying such a holding, and the rule of reason strongly opposes it.

III. In Pitzenberger v. Schnack, 215 Iowa 466, 245 N.W. 713, cited by the majority, the natural mother of an illegitimate child, who was under an adjudication of insanity at the time of the adoption, was held to have been incapable of forming an intent to abandon it. The case has no relevancy here. Child Saving Institute v. Knobel, 327 Mo. 609, 37 S.W.2d 920, 76 A. L. R. 1068, concerns an adoption had without notice to the child-placing agency to whom the child had been made over, or to the surviving parent, and without the consent of either. The adoption was held void. So it would be in Iowa. Adoption statutes generally require consent of, or at least notice to, the natural parents or to child-placing agencies. The case throws no light on the question before us. It is said that in In re Adoption of Cannon, 243 Iowa 828, 53 N.W.2d 877, 880, we "assumed" the necessity of a period of residence in contemplation of adoption. The opinion says at pages 831 and 832 of 243 Iowa: "The real question here concerns the claimed absolute right of the custodial parent, *without cause or reason given,* to withdraw his consent once given and relied on, and thereby to prevent the proposed adoption." (Italics supplied.) This is a far cry from holding that the residence requirements are such as the majority now contends. There was no discussion of the point in the case; to learn it was involved will, I am sure, come as a surprise to at least some of the Justices who concurred in the opinion. Ex parte Flynn, 87 N. J. Eq. 413, 100 A. 861, 863, Wade v. State, 24 Ala. App. 176, 132 So. 71, and Richards v. Collins, 45 N. J. Eq. 283, 17 A. 831, 14 Am. St. Rep. 726, are custodial cases holding that a stranger may not take a child from one having custody. Their citation illustrates again the fundamental misconception in which the majority approaches this case: The failure to realize the real purpose of adoption, and the erroneous belief that adoption is in itself a custodial proceeding and de-

termines custody. I have already discussed this question and cited many authorities illustrating the unsoundness of the majority's position.

IV. The great purpose of the adoption statutes is the welfare of the child. The authorities are uniform upon this point. The rule was well stated in In re Santos Estates, supra, at page 130 of 185 Cal., page 1057 of 195 P., where the California Supreme Court said:

"Wherever possible, such a construction should· be given adoption laws as will sustain, rather than defeat, the object they have in view. * * * The main purpose of adoption statutes is the promotion of the welfare of children, bereft of the benefits of the home and care of their real parents, by the legal recognition and regulation of the consummation of the closest conceivable counterpart of the relationship of parent and child. * * * *The statutes in question should not, therefore, be construed so as to exclude an orphan in the custody of a guardian from the realization of the peculiar advantages to be derived from an adoption unless such construction be unavoidable.* [Italics supplied.]"

Leonard v. Honisfager, supra, at page 609 of 43 Ind. App., page 91 of 88 N.E., contains this statement of the law: "The court, in making the order [of adoption], looks alone to the welfare of the child * * *. No one but the living parents can stand in the way of the power and authority of the court to do, in this matter, what its judgment and discretion shall dictate will be to the best interest of the child."

With this rule in mind our statutes place much reliance upon the wisdom and discretion of the trial court. To enable him to exercise his judgment intelligently and fairly it is provided that an investigation shall be made by some person or agency appointed by the court, and here the record shows The Family Service League of Waterloo was named for that purpose. Although its report, recommending the adoption and detailing its reasons therefor, is a part of the printed record, it may be that because of the manner in which this cause was determined we may not consider it. But we must assume it did make a report

and the court had such report before it when it entered its decree. It would not have been justified in so acting otherwise, and we must presume it acted in accordance with law. Burtch v. Zeuch, 200 Iowa 49, 202 N.W. 542, 39 A. L. R. 1349; Sewell v. Lainson, 244 Iowa 555, 560, 57 N.W.2d 556, 559.

The purpose of the statutes and of adoption proceedings generally have here been served. A home suited to the orphan child has been found. The court must have found that he would there receive the best possible approximation of the missing love and care to which he was entitled from his natural parents. This is not to say the custodial rights of the appellant have thereby been determined. The decree of adoption is a finding that the adoptive parents are fit persons to have the custody, but as the many authorities above-cited hold, their rights to custody as against anyone not required by the statute to be made a party to the adoption proceedings are still to be determined upon a proper hearing in which such third party will have his day in court. The result reached by the majority prevents any determination of the best interest of the child.

In fact, neither the appellant nor the majority pays the slightest heed to the cardinal principle above-stated. It was not suggested in the appellant's petition to vacate the decree or in his argument in this court, that the best interest of the child be considered, or it is in any way important. Nor does the majority opinion make any mention of what all other authorities say is the controlling factor in adoption, except near its close says: "The safeguards and provisions for determining what is for the best interests of the child, however, require the most careful observance." It then proceeds to ignore this basic principle of adoption in its entirety. Its solution leaves no way in which the welfare of the child can be determined. It concerns itself solely with the interest of the stepfather and concludes by holding there is nothing to be considered but his right of custody, and places this above any thought of what is best for this small boy, and it does this by reading words and meaning into the statutes which I submit are not to be found there.

The result must be shocking to the conscience of all who will pause to study the decided authorities and to reflect upon

the true meaning of the law. The majority holds no adoption can be had without the consent of the stepfather, and likewise there can be no adoption unless the child can, in some manner, be retrieved from the stepfather's custody so the residence requirements which are read into the statute may be complied with. All this without regard to the welfare of the child or the benefits which the district court must have found would accrue to him in the adoptive home. There is no manner in which the proposed adoptive parents can get custody of the small boy unless they are fortified with an adoption decree, in which case they might try out the issue of welfare through habeas corpus. In such they might or might not be successful, but at least the issue of the best interest of the child could be determined. The majority holds they are helpless to get the question before any court. Its opinion concludes with a direction for remand and dismissal of their petition "unless consent and peaceful custody can be obtained." The only chance vouchsafed them is that the state might take custody of the boy under Code chapter 232, which means if he becomes neglected, dependent or delinquent. This is cold comfort for those who believe the courts should have an opportunity to decide what will best serve the child's welfare.

So the absolute veto power is placed in the hands of a stepfather, a stranger to the blood. He has custody; his consent is of course unobtainable. He can by virtue of his status as one in loco parentis, holding possession, prevent any adoption no matter how desirable, no matter how much it may be wished for by the boy's own kin—grandparents, aunts, uncles or other relatives. His rights are all-important; they are made paramount to the welfare of the boy. Yet he may, at any minute, abandon his obligations and cast the child out upon the world. In 67 C. J. S., Parent and Child, section 80, pages 808, 809, the rule is thus stated: "The obligation assumed by a stepparent to support a stepchild is not a continuing one, but may be abandoned at any time * * *."

In Schneider v. Schneider, 25 N. J. Misc. 180, 183, 52 A.2d 564, 566, is this: "If a stepfather voluntarily accepts into his family a child of his wife by a former husband and assumes the

obligation of a parent for maintenance, the obligation continues only as long as he permits the child to be in the home."

We ourselves have said: "While he [the stepfather] may have been liable for the expenses of such a family so long as he continued to live in and to be a part of it, yet when he threw off these obligations toward his stepchildren, *as he had the right to do,* his liability for their support ceased." (Italics supplied.) Menefee v. Chesley, 98 Iowa 55, 59, 66 N.W. 1038, 1040.

If it be thought to permit an adoption here would result in some injustice to the stepfather, the first answer is that the matter was for the decision of the legislature. It did not see fit to include stepparents in the list of those whose consent is required. It specified certain persons, or agencies, who must give consent or have notice; it did not say that anyone having custody must give consent before an adoption may be had. The second answer is that adoption does not determine custody as the majority assumes throughout its opinion. These are the technical answers. The third answer, for those who wish to go beyond the law and inquire into the broad equities of the situation, is that according to the allegations of his petition to vacate the appellant was married to the mother of the boy and had him in his home for three years, yet did not see fit to adopt him. He had the first opportunity; why should he now be heard to complain of injustice if someone else, people in whose home the child had lived for some years and whom the trial court found proper and fitted, wish to adopt? The old fable of the dog in the manger comes readily to mind. I concede this third answer has little bearing upon the legal issues involved, except as it bears upon the reasonableness or unreasonableness of the demonstrated legislative intent in enacting the adoption statutes as it has.

I have pointed out that the appellant does not argue the question of what is for the best interest of the child. He asks, and is now given, the right to deny adoption to any other persons, no matter how fit, no matter how well equipped they may be to supply that affection which a small child so much needs, and to furnish support and education. At the same time his own liability to the boy is an ephemeral one. which he may at any time cast off as his own desires dictate. The question of the wel-

fare of the child does not enter into his application or into the consideration of the majority. I cannot believe any such result was intended by our adoption statutes. Certainly it does not appear from a fair reading of them. There is every reason in equity and good conscience and in the primary purpose of the child's welfare why we should not strive for a strained—to me it seems an impossible—construction in order to place this unfortunate small boy at the mercy of one who may discard him at any time he likes. Both authoritative precedent, and logic, support this view; but unfortunately, while they prove, they do not always persuade.

I would affirm the trial court.

BLISS, GARFIELD and WENNERSTRUM, JJ., join in this dissent.